[Civ. No. 25902.   First Dist., Div. Four.   Oct. 14, 1969.]

FIELDSON ASSOCIATES, INC., Plaintiff, Cross-defendant and Respondent, v. WHITECLIFF LABORATORIES, INC., Defendant, Cross-complainant and Appellant.

Myers, Hawley, Morley & Moore and Paul I. Myers, Jr., for Defendant, Cross-complainant, and Appellant.

Edward A. Friend for Plaintiff, Cross-defendant and Respondent.

CHRISTIAN, J.—Respondent Fieldson Associates, Inc., a Chicago-based packaging firm, commenced this action in the municipal court against appellant Whitecliff Laboratories, Inc. to recover $3,011.14, the contract price for a supply of display cartons for use by Whitecliff in marketing one of its products, a one-cup coffee maker called "Brew-A-Cup." Whitecliff cross-complained for loss of profits in the amount of $5,359.04, allegedly incurred on Fieldson's breach of a contract to purchase 100,000 Brew-A-Cup units to be used as premiums in a grocery store bacon promotion being organized by Fieldson for the Armour meat packing firm. The action was thereupon transferred to the superior court.

It was established at trial that Fieldson completed the purchase of only 35,136 units. The principal issue was whether a written purchase order referring to 100,000 units was intended to be a binding commitment on the part of Fieldson. Mayfield, who was Fieldson's president, testified that the purchase order was intended only as an "act of good faith to show that this was the type of volume [Fieldson was] going to try to obtain"; he also testified that Whitecliff's president, Perlov, told him that he would not hold Fieldson to the 100,000 figure. Perlov directly contradicted Mayfield, testifying that he had insisted on an order from Fieldson for a guaranteed minimum amount, and that it was on this understanding that he obtained the purchase order for 100,000 units. He testified that nothing was said by Mayfield or himself to indicate that the purchase order was other than a binding contract of purchase.

Respondent offered in evidence a collection of letters which had passed between Perlov and Mayfield after transmittal of the purchase order. Appellant objected on the ground that several of the letters written by Perlov contained offers of compromise which, under Evidence Code section 1152, subdivision (a),[1] were inadmissible. The Perlov letters were rele-

[1]Section 1152, subdivision (a): "Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money or any other thing, act or service to another who has

vant in that none of them, including those written after the Armour promotion had terminated with disappointing results, referred to lost profits based upon the 100,000-unit purchase order. The court admitted the letters in evidence for the purpose of helping to determine what the intent of the parties had been at the time the purchase order was transmitted. During later cross-examination of Perlov regarding the letters, the court over objection permitted questions regarding his failure to assert in the letters claims for lost profits under the purchase order.

The court found that the purchase order "was not intended as a binding commitment" on the part of respondent and entered judgment in favor of respondent in the amount of $2,554.37. After a new trial was granted as to appellant's claimed right to set off certain costs, judgment was again entered for respondent in the same amount. The appeal is from both judgments.

The sole contention on appeal is that the admission in evidence of the letters was prejudicial error. This contention cannot be sustained. The letters were received for the sole purpose of showing the nonbinding nature of the "purchase order" in order to defeat appellant's cross-complaint. When considered for that limited purpose, the letters had no bearing upon the primary validity of the claim asserted by respondent against appellant for the unused cartons. Evidence Code section 1152 provides that evidence that a party has offered to compromise a claim is inadmissible to prove liability for *that claim*. Section 1154[2] makes an offer of compromise inadmissible to show *invalidity* of the claim to which the offer related. Here the letters were not used to prove either liability for, or invalidity of, the claim concerning which the offer of compromise was made. Rather, they were received to show the invalidity of a different claim: appellant's claim for lost profits under the purchase order, which was never mentioned in the negotiations concerning the cartons.

---

sustained or will sustain or claims that he has sustained or will sustain loss or damage, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove his liability for the loss or damage or any part of it."

[2]Section 1154: "Evidence that a person has accepted or offered or promised to accept a sum of money or any other thing, act, or service in satisfaction of a claim, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove the invalidity of the claim or any part of it."

The rule excluding offers of settlement has not generally been regarded as creating a class of privileged communication (4 Wigmore on Evidence (3d ed.) § 1061). Having seen that the letters were not, by the express terms of sections 1152 and 1154, made inadmissible for the limited purpose for which they were received, we must determine whether exclusion was required by some general policy established by implication of the statute. The official comment on section 1152, published by the Law Revision Commission, is silent on the question. But the obvious policy of the statute is to avoid deterring parties from making offers of settlement and to facilitate candid discussion which may lead to settlement of disputes. Negotiations might well be discouraged if a party knew that statements made by him (or his failure to make certain statements) might later be used to prove the invalidity of some other claim which he wished to assert. But here appellant's failure to assert his alleged claim under the purchase order was circumstantial evidence tending to show that the parties never intended the purchase order to be binding. That would be so whether or not another claim was under discussion. The contents of the negotiations concerning the other claim were of no significance; the fact that there were negotiations at all was significant only as showing that the parties were in communication without appellant having asserted a claim which it would have been natural to mention. The admissibility of such evidence for the limited purpose described above could have had no tendency to inhibit candid discussion or deter either party from attempting to effect a compromise (cf. *Conderback, Inc.* v. *Standard Oil Co.* (1966) 239 Cal.App.2d 664, 683 [48 Cal.Rptr. 901]). We conclude that the statute does not impliedly call for exclusion of the evidence complained of.

The judgments are affirmed.

Devine, P. J., and Rattigan, J., concurred.