[No. B191048. Second Dist., Div. Seven. Dec. 17, 2007.]

DAVID ZHOU, Plaintiff and Respondent, v.
UNISOURCE WORLDWIDE, INC., et al., Defendants and Appellants.

**COUNSEL**

Borton, Petrini, Rosemarie S. Lewis, Matthew J. Trostler and Casandra P. Cushman for Defendants and Appellants.

Law Offices of Andrew L. Ellis and Andrew L. Ellis for Plaintiff and Respondent.

**OPINION**

**PERLUSS, P. J.**—Unisource Worldwide, Inc. (Unisource), and Frank David Barreto appeal from the judgment entered in favor of David Zhou in this personal injury action arising from a multivehicle accident in June 2003 in which Barreto, operating a truck owned by Unisource, struck an automobile from behind, which in turn hit Zhou's van, seriously injuring Zhou. Unisource and Barreto contend the trial court erred in excluding from evidence as settlement negotiations two letters written by Zhou to an insurance company concerning a second motor vehicle accident in which he had been involved in March 2004. We agree the letters were admissible. However, because it is not reasonably probable Unisource and Barreto would have achieved a more favorable result in the absence of this error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The June 2003 Accident*

On June 17, 2003 Barreto, an employee of Unisource, lost control of the truck he was driving on Washington Boulevard near Leo Avenue in the City

of Commerce and crashed into the rear of a Volvo sedan, slamming the Volvo into the back of Zhou's 2000 Toyota van while Zhou was stopped at a red light. The force of the collision pushed Zhou's van into the intersection, while the Volvo continued forward and hit another car. In his lawsuit filed one year later, Zhou alleged he had suffered severe injuries as a result of the accident, including a hematoma to his forehead, fractured teeth and injuries to his neck and back that led to three separate surgeries.

### 2. *The March 2004 Accident and Zhou's Letters to State Farm*

On March 1, 2004 Zhou was involved in a second motor vehicle accident when Donna Thorntill backed into his van while she was leaving a parking lot on State College Boulevard in Anaheim. On April 8, 2004 Zhou wrote to State Farm Insurance Company, Thorntill's carrier, asserting "this accident has increased my neck and back pain which was caused by a truck accident on June 1[7], 2003 in the City of Commerce, CA." Zhou also stated, "I went some more rehab program, now I can just barely drive for short distance, like shopping and go to hospital to continue my rehab program. I can't travel or go to work for right now." The letter included a request for payment of an unspecified sum to repair Zhou's van and to cover the cost of a rental car.

On July 7, 2004 Zhou wrote State Farm a second letter, acknowledging "the major reason of my neck and low back [pain] was caused by the car accident of June 17, 2003," but insisting "this new car accident did complicate my medical treatments, and increase my back and neck pain substantially." This second letter also suggested that Zhou had hoped to avoid surgery for his neck and lower back, but, as a result of the second accident, "the doctors think there is no way to avoid the surgery to get fully recovered." Zhou explained he had not yet told his lawyer about the second accident, "Right now, based on the medical treatments and one surgery I had, and the one more surgery for my neck, by the time I finished, the minimum medical bills for this case will be at least over $100,000 or more. I know if I told my lawyer [about] this new car accident on March 1, my lawyer would probably hold your insurance company responsible for at least to share for the medical bills and any other loss (wage loss and other losses), and your lawyer will argue with Unisource['s] lawyer to decide who is responsible for how much percent of this medical bills and other compensation . . . I really do not want [to] complicate this issue, because my life and medical treatment is already complicated enough . . . ." The letter urged a "quick and confidential[] settlement for this without lawyer's involvement" although Zhou did not make a specific settlement demand.

### 3. *Zhou's Motion to Exclude the State Farm Letters*

Prior to trial Zhou moved in limine for an order excluding all evidence relating to any settlement or settlement negotiations concerning the March 1, 2004 accident, specifically including the two letters he had written to State Farm, under Evidence Code sections 1152, subdivision (a) (offers to compromise inadmissible to prove liability), and 352 (discretion to exclude evidence if probative value substantially outweighed by undue consumption of time or danger of undue prejudice or confusion).[1] The trial court granted the motion, explaining that statements made during the negotiation of a settlement, not only the offer to compromise itself, are inadmissible to prove liability for a loss or damage.

### 4. *Trial and the Jury's Verdict*

Unisource, the owner of the truck involved in the June 17, 2003 accident, and Barreto, the driver, admitted liability. Trial concerned solely the question of damages. The defense theory was that Zhou's injuries and medical expenses were not solely (or even primarily) due to the collision caused by Barreto's negligence, but were also the product of preexisting conditions (particularly Zhou's dental work), misdiagnosis and overcharging by certain of Zhou's health care professionals and unrelated accidents including the March 1, 2004 parking lot crash and a fall Zhou suffered after being bitten by a dog in July 2003.

At trial Zhou testified he did not consider the March 1, 2004 collision to be a "large accident." He acknowledged the accident "increased my pain by some degree" but insisted his pain level had returned to its preaccident level within one or two weeks.

Following a two-week trial, the jury returned a verdict in Zhou's favor for $1,423,295.24: $173,295.24 in economic damages and $1,250,000 in general damages. Unisource and Barreto's motion for a new trial on the ground of excessive damages was denied.

## CONTENTION

Unisource and Barreto contend the trial court misapplied section 1152, subdivision (a), and committed prejudicial error when it excluded as part of settlement negotiations the two letters Zhou wrote to State Farm concerning his injuries from the March 1, 2004 accident.

---

[1] Statutory references are to the Evidence Code unless otherwise indicated.

## DISCUSSION

### 1. *Sections 1152 and 1154*

Section 1152, subdivision (a), provides, "Evidence that a person has, in compromise . . . furnished or offered or promised to furnish money or any other thing . . . to another who has sustained . . . loss or damage, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove his or her liability for the loss or damage or any part of it." Section 1154 provides, "Evidence that a person has . . . offered . . . to accept a sum of money or any other thing . . . in satisfaction of a claim, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove the invalidity of the claim or any part of it."[2] Both provisions are based on the public policy in favor of the settlement of disputes without litigation and are intended to promote candor in settlement negotiations: "The rule prevents parties from being deterred from making offers of settlement and facilitates the type of candid discussion that may lead to settlement." (*Carney v. Santa Cruz Women Against Rape* (1990) 221 Cal.App.3d 1009, 1023 [271 Cal.Rptr. 30]; see *Caira v. Offner* (2005) 126 Cal.App.4th 12, 32 [24 Cal.Rptr.3d 233]; *Hasler v. Howard* (2004) 120 Cal.App.4th 1023, 1026 [16 Cal.Rptr.3d 217]; see generally Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) foll. § 1154, p. 532 ["Section 1154 stems from the same policy of encouraging settlement and compromise that is reflected in Section 1152"].)

"The Law Revision Commission comment accompanying the enactment of Evidence Code section 1152 specifically emphasized that the statute was drafted to include statements made in the context of settlement negotiations: 'The words "as well as any conduct or statements made in negotiation thereof" make it clear that statements made by parties during negotiations for the settlement of a claim may not be used as admissions in later litigation. . . . The rule excluding offers is based upon the public policy in favor of the settlement of disputes without litigation. The same public policy requires that admissions made during settlement negotiations also be excluded. . . .' " (*Caira v. Offner, supra,* 126 Cal.App.4th at p. 32.)

---

[2] Although trial and appellate counsel for Zhou, Unisource and Barreto, as well as the trial court itself, have all assumed the evidentiary question in the case involves the interpretation and application of section 1152, which prohibits evidence of settlement discussions and offers of compromise to prove a defendant's liability, Zhou's two letters implicate section 1154, which precludes evidence of an injured party's offer to discount a claim to prove the claim's invalidity, not section 1152. Because analysis of the admissibility of settlement discussions does not differ under these two related statutes, however, this error does not affect the outcome of the case.

## 2. *Standard of Review*

A trial court's ruling on the admissibility of evidence is generally reviewed for abuse of discretion. (E.g., *People v. Williams* (1997) 16 Cal.4th 153, 196–197 [66 Cal.Rptr.2d 123, 940 P.2d 710] ["[i]n determining the admissibility of evidence, the trial court has broad discretion. . . . On appeal, a trial court's decision to admit or not admit evidence, whether made *in limine* or following a hearing pursuant to Evidence Code section 402, is reviewed only for abuse of discretion"]; accord, *People v. Alvarez* (1996) 14 Cal.4th 155, 203 [58 Cal.Rptr.2d 385, 926 P.2d 365] ["appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion"]; *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 885 [57 Cal.Rptr.3d 454] ["[w]e review a trial court's decision to admit or exclude evidence under the abuse of discretion standard"].) Relying on this well-established principle, as well as case law involving analogous evidentiary provisions in other jurisdictions, the court in *Caira v. Offner, supra,* 126 Cal.App.4th 12, held the trial court's ruling excluding evidence under sections 1152 or 1154 is properly reviewed for an abuse of discretion. (*Caira,* at pp. 31–32.) Although we do not disagree with that conclusion when the issue involves evaluating particular facts and applying established law to those facts, to the extent the trial court's decision depends on the proper construction of sections 1152 and 1154, as here, the issue is a question of law, which we review de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546 [61 Cal.Rptr.3d 318]; cf. *Moving Picture etc. Union v. Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, 401 [86 Cal.Rptr. 33] [admission of evidence prohibited by § 1152 "is error"].)

## 3. *The Trial Court Erred in Excluding Zhou's Letters to State Farm*

Unisource and Barreto assert the trial court erred in excluding the Zhou letters because Zhou's statements concerning the extent of his injuries as a result of the March 1, 2004 accident were independent of any legitimate offer of compromise and, in any event, were not proffered for the purpose of proving either Thorntill's liability or the invalidity of Zhou's claim with respect to the March 1, 2004 incident, which was the subject of the two letters to State Farm. Although we disagree with the first contention, the second point has merit.

### a. *The letters to State Farm were part of settlement negotiations*

There can be no doubt Zhou's April 8, 2004 and July 7, 2004 letters to State Farm were intended to prompt State Farm to make a settlement offer with respect to the injuries he allegedly suffered on March 1, 2004. Indeed, Zhou said as much in the second letter: "I am writing to you to see if we can have a separate quick and confidential[] settlement for this without lawyer's involvements. All I am asking is some reasonable compensations to cover for my physical pain and economic loss for the past few months." However, because neither letter included a specific offer to discount his claims or suggested in what way he might be prepared to compromise his demands, Unisource and Barreto argue the letters were not part of settlement negotiations and, therefore, fall outside the protective ambit of sections 1152 and 1154.

■ Unisource and Barreto are correct that a letter itemizing what the sender thinks the recipient owes him or her and demanding payment, even under threat of legal action, is, in effect, a bill and not an offer in settlement or a document in settlement negotiations excludable under section 1152 and 1154. (*Volkswagen of America, Inc. v. Superior Court* (2006) 139 Cal.App.4th 1481, 1494 [43 Cal.Rptr.3d 723] ["[i]f the statement was not intended as a concession but as an assertion of " "all that he deemed himself entitled to," "it is not an offer of compromise"]; see also *Winchester Packaging, Inc. v. Mobil Chemical Co.* (7th Cir. 1994) 14 F.3d 316, 318 (Posner, J.) [bill is not settlement offer].) "A statement by a claimant concerning the extent of his injuries or disease, or concerning the amount of damages he or she claims to have suffered, if 'not connected with an offer of compromise,' may well constitute an admissible admission." (*Volkswagen of America, Inc.,* at p. 1494; see *Moving Picture etc. Union v. Glasgow Theaters, Inc., supra,* 6 Cal.App.3d at p. 402.) But as the Court of Appeal cautioned in *Caira v. Offner, supra,* 126 Cal.App.4th at page 36, "Although statements that are truly independent of an offer of compromise are still admissible in the wake of the enactment of Evidence Code section 1152, the question which statements are 'connected' and which statements are 'independent' [citation], must be answered in light of the strong policy in favor of promoting candor during settlement negotiations embodied in the statute."

It is not unusual for a party to a dispute, as an opening gambit in settlement negotiations, to invite the opposing party to make the initial offer. That is what Zhou did in his letters to State Farm. Although arguably preliminary to the actual negotiations, in light of the Legislature's express

inclusion within sections 1152 and 1154 of not only settlement offers and demands but also "any conduct or statements made in negotiation thereof," as well as the strong policy in favor of encouraging such settlement discussions, the trial court did not abuse its discretion in finding the letters constituted settlement discussions simply because they did not contain a specific dollar offer to compromise or settlement demand. (See *Caira v. Offner, supra*, 126 Cal.App.4th at p. 32 ["section 1152 broadly precludes the introduction of statements made in the context of settlement negotiations" (italics omitted)].)

> b. *The letters to State Farm were not offered to prove the invalidity of the claim under negotiation*

█ Although we agree with Zhou and the trial court that the State Farm letters were properly considered part of settlement discussions, section 1154 only precludes admission of evidence of statements made in such negotiations "to prove the invalidity of *the claim* or any part of it." (Italics added.) That is, the two letters to State Farm would not be admissible in a lawsuit by Zhou against Donna Thorntill for damages relating to the March 1, 2004 State College Boulevard parking lot accident. Unisource and Barreto, of course, were not litigating that claim, but rather the extent of Zhou's injuries from the entirely separate accident on June 17, 2003, for which they had admitted responsibility—a different lawsuit between different parties involving a different primary right.

A somewhat similar situation was considered in *Fieldson Associates, Inc. v. Whitecliff Laboratories, Inc.* (1969) 276 Cal.App.2d 770 [81 Cal.Rptr. 332], in which the plaintiff in a breach of contract action was allowed to introduce settlement letters to defend against a cross-complaint for lost profits based on the alleged breach of a different contract between the parties. The *Fieldson Associates* court held the letters were admissible for this limited purpose because they were not offered to prove the validity or invalidity of the claim addressed in the settlement negotiations: "Evidence Code section 1152 provides that evidence that a party has offered to compromise a claim is inadmissible to prove liability for *that claim*. Section 1154 makes an offer of compromise inadmissible to show *invalidity* of the claim to which the offer related. Here the letters were not used to prove either liability for, or invalidity of, the claim concerning which the offer of compromise was made. Rather, they were received to show the invalidity of a different claim: appellant's claim for lost profits under the purchase order, which was never mentioned in the negotiations concerning the cartons." (*Fieldson Associates*, at p. 772, fn. omitted.)

Similarly, in this case Zhou's letters to State Farm regarding his purported injuries from the March 1, 2004 accident were not offered to disprove the merits of the claim under negotiation, but rather "to show the invalidity of a different claim." (*Fieldson Associates, Inc. v. Whitecliff Laboratories, Inc., supra,* 276 Cal.App.2d at p. 772; cf. *Broadcort Capital Corp. v. Summa Medical Corp.* (10th Cir. 1992) 972 F.2d 1183, 1194 [federal rule barring admission of evidence relating to settlement discussions does not preclude evidence of settlement of different dispute;[3] "the evidence was not admitted to prove the validity or amount of the 'claim under negotiation' "]; *Towerridge, Inc. v. T.A.O., Inc.* (10th Cir. 1997) 111 F.3d 758, 770 ["[r]ule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated"].) They were properly admitted for that limited purpose. (See *Volkswagen of America, Inc. v. Superior Court, supra,* 139 Cal.App.4th at p. 1491 ["Evidence Code sections 1152 and 1154 are not absolute bars to admissibility, since a settlement document may be admissible for a purpose other than proving liability"]; *Carney v. Santa Cruz Women Against Rape, supra,* 221 Cal.App.3d at p. 1023 [letter of apology by rape victim was properly admitted when not introduced to prove victim's " 'liability' for any 'loss or damage' "].)

The analysis in *Caira v. Offner, supra,* 126 Cal.App.4th 12, does not require a different result. In affirming the trial court's ruling excluding evidence of an e-mail sent by one of the parties during prelitigation settlement negotiations, the court in *Caira* distinguished *Fieldson Associates, Inc. v. Whitecliff Laboratories, Inc., supra,* 276 Cal.App.2d 770, on the ground "in *Fieldson*, the letters were admitted to prove a claim that was wholly distinct from the claim discussed in the letters themselves," while admission of the e-mail in *Caira* was "to prove a claim that was specifically discussed in the e-mail." (*Caira,* at p. 36.) Because his letters to State Farm "specifically discussed" injuries from both the June 17, 2003 and March 1, 2004 accidents, Zhou argues under *Caira* the letters are properly excluded under section 1154 in lawsuits involving either incident. But the lawsuit in *Caira* involved disputes over ownership of a family company; and the e-mail excluded from evidence, sent by one family member to several others during settlement negotiations, concerned the ownership of a sizeable block of preferred stock in the corporation—one of the questions at issue in the litigation. (*Caira,* at p. 17.) That is, the e-mail was part of settlement discussions concerning one of the specific claims being tried—not, as here, a different claim—and thus

---

[3] Rule 408(a) of the Federal Rules of Evidence (28 U.S.C.) provides in part, "Prohibited uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction: [¶] (1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept . . . a valuable consideration in compromising or attempting to compromise the claim; and [¶] (2) conduct or statements made in compromise negotiations regarding the claim . . . ."

was properly excluded under section 1152. (*Caira*, at p. 36; see also *Lampliter Dinner Theater v. Liberty Mut. Ins. Co.* (11th Cir. 1986) 792 F.2d 1036, 1042 [evidence of settlements with third parties arising out of same incident that is subject of claim being litigated properly excluded under Fed. Rules Evid., rule 408(a), 28 U.S.C.]; *Branch v. Fidelity & Cas. Co. of New York* (5th Cir. 1986) 783 F.2d 1289, 1294 [same].)

### 4. *The Error in Excluding the State Farm Letters Was Harmless*

The trial court's error in excluding evidence is grounds for reversing a judgment only if the party appealing demonstrates a "miscarriage of justice"—that is, that a different result would have been probable if the error had not occurred. (§ 354 ["[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice"]; Code Civ. Proc., § 475 ["[n]o judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed"];[4] *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163]; see *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 51–52 [115 Cal.Rptr.2d 151] [prejudice will not be presumed; burden rests with party claiming error to demonstrate not only error, but also a resulting miscarriage of justice].) Unisource and Barreto have failed to establish they were prejudiced by the trial court's erroneous exclusion of the State Farm letters.

First, only Zhou's letters, not all evidence relating to the March 1, 2004 accident, were excluded. In fact, Zhou testified about the accident on direct examination, admitting "it increased my pain by some degree," and was then cross-examined about the circumstances of the accident, the injuries he sustained and the treatment he received (such as it was). In particular, defense counsel was able to clearly make his point that Zhou failed to discuss with the health care professionals primarily involved in treating him either this

---

[4] The requirement that an appellant demonstrate prejudice, in addition to error in the trial court proceedings, is also contained in the California Constitution. (Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)

second accident or the July 2003 incident in which Zhou fell to the ground following a dog bite, suggesting Zhou was attempting to exaggerate the extent of his injuries from the crash caused by Barreto. To be sure, Zhou attempted to minimize the long-term effects of the second accident at trial; and his self-serving statements to State Farm that his pain from the original accident was "substantially" greater following his collision with Thorntill might have provided additional fodder for cross-examination. But the excluded letters also included Zhou's insistence "the major reasons of my neck and low back [pain] was caused by the car accident of June 17, 2003," thereby limiting the usefulness of the letters to Unisource and Barreto.

Second, in his attempt to minimize the damages Zhou would recover, Unisource's counsel focused primarily on the initial physical examinations of Zhou following the June 17, 2003 accident, which failed to document that Zhou was experiencing any back pain at all or suffered any fractured or cracked teeth as a result of the accident. The defense theory was that Zhou falsely testified he lost consciousness at the scene of the accident and struck the left side of his forehead against the steering wheel in the collision. According to defense counsel, Zhou's exaggeration of the extent of his injuries began shortly thereafter, not the following year after the second automobile accident: "It was three days later when [Zhou] went to . . . Dr. Lee, and that's when all of this treatment started spiraling out of control. Because notwithstanding the relatively benign and mild symptoms as identified in these hospital records, he treated on a continuous basis from June 20, 2003, all the way through December 2003." As part of this attack on the extent of Zhou's compensable injuries, defense counsel emphasized Zhou did not seek any dental treatment until September 2004, a date at odds with both the June 2003 and March 2004 vehicle accidents as the cause of the damage. (There is no reference to any injuries to Zhou's mouth or teeth in the State Farm letters.)

Finally, defense counsel suggested Zhou's doctors performed unnecessary procedures (including surgery) and overcharged for the work done in order to inflate their patient's potential recovery in litigation—yet another attack on Zhou's damage claims essentially unrelated to the March 1, 2004 motor vehicle accident. For the most part, the jury rejected these defense efforts, although it reduced the economic damages sought from approximately $190,000 to $173,295.24. Based on this record, there is no reason to believe Zhou's modest puffery in his letters to State Farm concerning the March 1, 2004 accident would have affected this verdict in any regard.

## DISPOSITION

The judgment is affirmed. Zhou is to recover his costs on appeal.

Woods, J., and Zelon, J., concurred.

A petition for a rehearing was denied January 2, 2008, and appellants' petition for review by the Supreme Court was denied March 12, 2008, S160263. Moreno, J., did not participate therein.