Filed 4/30/20; Certified for Publication 5/21/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RAQUEL BETANCOURT,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>OS RESTAURANT SERVICES, LLC, et al.,<br><br>Defendants and Appellants. | B293625<br><br>(Los Angeles County<br>Super. Ct. No. BC629916) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Deirdre Hill, Judge. Reversed and remanded with directions.

Raines Feldman, Lauren J. Katunich, Robert M. Shore and Leticia M. Kimble for Defendants and Appellants.

Felahy Employment Lawyers, Allen Felahy; Yash Law Group and Yashdeep Singh for Plaintiff and Respondent.

_____

**SUMMARY**

The Labor Code mandates an award of reasonable attorney fees to the prevailing party in any action brought for the nonpayment of wages, if any party requests attorney fees at the initiation of the action. (Lab. Code, § 218.5, subd. (a).)[1] But an action brought for failure to provide rest breaks or meal periods (§ 226.7) is *not* "an 'action brought for the nonpayment of wages' " within the meaning of section 218.5. (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1255 (*Kirby*); *id.* at p. 1259 ["the Legislature intended section 226.7 claims to be governed by the default American rule that each side must cover its own attorney's fees"].)

The trial court awarded plaintiff over $280,000 in attorney fees, even though the only wage and hour claims alleged and litigated were for rest break and meal period violations, and claims for penalties based on those violations. We conclude the trial court abused its discretion and reverse the judgment to the extent it awards attorney fees to plaintiff.

**FACTS**

Defendants are OS Restaurant Services, LLC and Bloomin' Brands, Inc. They are the owners or operators of a Fleming's Steakhouse & Wine Bar on Olympic Boulevard in Los Angeles. Plaintiff Raquel Betancourt worked there as a server from 2008 through 2015.

### 1.    The Complaint

In August 2016, plaintiff sued defendants. The complaint alleged defendants regularly failed to give plaintiff her full

---

[1]    Further statutory references are to the Labor Code unless otherwise specified.

uninterrupted rest periods, and that defendants wrongfully terminated plaintiff in retaliation for her making internal complaints that defendants violated wage and hour laws and food safety laws.

Plaintiff alleged she saw a chef using a vegetable cutting board to prepare raw chicken, and reported the incident to her manager, but defendants ignored her report. Three months later, plaintiff informed Tiffany Yeargin, defendants' senior human resource business partner, that one of the chefs routinely used vegetable cutting boards to prepare raw chicken, and that employees were regularly denied their 10-minute rest periods.

Immediately following plaintiff's complaints to Ms. Yeargin, defendants' managerial employees began to retaliate by "highly scrutinizing Plaintiff's performance" and singling her out for discipline for spurious reasons. Defendants continued to prevent her from taking her 10-minute rest periods. Ms. Yeargin ignored plaintiff's complaints about the retaliatory actions.

The complaint alleged that in December 2015, defendants issued plaintiff a formal written reprimand "based upon false and fabricated accusations of insubordination, which resulted in Plaintiff's suspension." After that, plaintiff again informed Ms. Yeargin of the retaliation and requested the reprimand be removed from her employment record, but her request was denied.

"[I]n further retaliation against Plaintiff for her whistleblowing activities," defendants terminated plaintiff's employment. "To date, Defendants have refused to pay Plaintiff all wages earned and unpaid at the time of her termination; including, without limitation, unpaid rest period premiums."

Plaintiff alleged causes of action for retaliation and wrongful termination because of her reports of rest break and food safety violations. She also alleged she was entitled to recover unpaid premium wages under section 226.7 for the rest break violations; penalties, costs and attorney fees under section 226 for failing to include rest break premiums on her itemized wage statements; and waiting time penalties under sections 201 through 203 for failure to pay all wages on termination, "including, without limitation, unpaid premium wages in lieu of rest periods."

The prayer for relief requested attorney fees under sections 218.5 and 226, Code of Civil Procedure section 1021.5, "and any other applicable provisions of law."

## 2. The Litigation

Defendants answered the complaint in October 2016.

Discovery ensued. We will describe some of it as necessary in connection with our legal discussion. For now, it suffices to say that two days after the trial court issued a tentative ruling on October 11, 2017, compelling plaintiff to comply with discovery requests and awarding sanctions against her, and one day after plaintiff produced more than 1,000 previously withheld documents, the parties settled the case. About a month before the settlement, the parties had stipulated the complaint could be amended to add a cause of action for meal period violations.

## 3. The Settlement

The parties put the terms of their settlement agreement on the record in open court on October 13, 2017. Defendants agreed to waive plaintiff's payment of sanctions and to pay plaintiff $15,375 in full settlement of her claims for failure to provide meal and rest periods under section 226.7, failure to provide accurate

4

itemized wage statements under section 226, failure to pay all wages upon termination under sections 201 through 203, and "any and all wage-and-hour-related causes of action that were or could have been asserted in the complaint." Plaintiff agreed to dismiss with prejudice and without any payment her claims for retaliation and wrongful termination. The parties agreed to kick the can down the road on their dispute about plaintiff's right to recover attorney fees on her wage and hour claims by agreeing plaintiff could later file a motion for attorney fees incurred only on those claims, "consistent with applicable law."

4. **Plaintiff's Motion for Attorney Fees**

Plaintiff then sought $580,794 in attorney fees (and costs of more than $16,000), under sections 218.5 and 226. This consisted of a lodestar amount of $387,196 and a multiplier of 1.5. No time records were provided to the court, but plaintiff's counsel said 869.6 hours were incurred by his firm at various hourly rates. Plaintiff contended her wage and hour claims were "closely intertwined" with her retaliation and wrongful termination claims, so she was entitled to recover all of her fees and costs.

Defendants opposed the motion, contending that, among other reasons, *Kirby* and its progeny dictate that a party cannot, as a matter of law, recover attorney fees when she prevails only on a claim for meal or rest break premium pay. Defendants also contended plaintiff's claims of retaliation and wrongful termination were the crux of her case, and virtually all discovery was focused on those claims. Defendants gave multiple examples of discovery disputes requiring them to seek court intervention, none of which was relevant to meal and rest break claims, and many of which were directed at plaintiff's claims for economic damage flowing from her retaliation and wrongful termination

5

claims. Defendants referred to the court's October 11, 2017 tentative ruling stating that plaintiff "has wrongfully withheld documents" and that plaintiff and her counsel "have engaged in repeated abuses of the discovery process for months." Defense counsel's declaration stated that on October 12, 2017, plaintiff finally produced more than 1,100 probative documents that were highly damaging to plaintiff's case and credibility.

Defense counsel also attached plaintiff's July 18, 2017 settlement demand. In that demand, plaintiff's counsel valued her case at $750,000. Of that total sum, plaintiff's counsel valued the rest break and the derivative wage statement and waiting period penalty claims at less than $13,000.

Plaintiff came up with a new theory for recovery of all her attorney fees in her reply to defendants' opposition to the motion for attorney fees. She asserted—for the first time—that "[d]efendants' own payroll and timekeeping records demonstrate that Plaintiff was not paid for all hours worked; and that it was part of Defendants' timekeeping scheme to unilaterally reduce/adjust Plaintiff's timesheets in order to avoid paying Plaintiff for all hours worked and all earned overtime."

The declaration of plaintiff's counsel attached copies of defendants' timekeeping spreadsheets and one of plaintiff's wage statements. Plaintiff's counsel opined that his analysis of these documents showed plaintiff "was shorted .49 total hours, and virtually all of this is overtime." Plaintiff's counsel further opined the timekeeping spreadsheets showed "unilateral downward adjustments," and "[t]here were 47.82 total hours lost to 'adjustments.' " Counsel did *not* state, in the reply papers or in any subsequent filings, when he had performed this analysis, i.e., whether he performed the analysis before filing the motion for

6

attorney fees, or only after getting defendants' opposition asserting the focus of the litigation had been on the retaliation and wrongful termination claims.

At the January 26, 2018 hearing on the motion for fees, the court heard argument and continued the hearing for further briefing. The parties filed additional briefs, declarations and evidentiary objections. There were several more continuances following further hearings on the motion, some of which, but not all of which were reported by a court reporter. One of the unreported hearings was continued because defense counsel was pregnant and birth was imminent.

In supplemental papers, plaintiff's counsel said, upon further analysis, he determined that only about 10 percent of the hours incurred by his firm were devoted primarily to the retaliation and wrongful termination claims, and 90 percent of the time was incurred to litigate the wage and hour claims. Counsel reduced the fee request by 10 percent from the lodestar of $387,196 to $348,476.40, and did not request a lodestar multiplier. In later-filed supplemental papers, plaintiff sought another $48,914 for work performed in litigating the fee application since filing that motion, for a total of $397,390. No time records were ever supplied.

Defendants continued to assert there was no evidence that plaintiff raised, litigated, and expended attorney fees on any theory of wage liability other than meal and rest breaks for which attorney fees cannot be awarded. Defense counsel's declaration also stated that plaintiff's interpretation of the pay records was wrong, because her counsel looked at the wrong column for hours worked; and adjustments were made because of failure to clock

out at the end of a shift, as confirmed on other time reports produced in discovery.

On July 13, 2018, without calling the case for hearing, the court granted the motion for attorney fees in the amount of $280,794 (and costs of $8,671.95), and set an order to show cause regarding dismissal for August 31, 2018. The court ruled that, although "some aspects" of plaintiff's wage statement and waiting penalty claims "are seemingly derivative of the Section 226.7 claim, Plaintiff has proffered evidence that establishes that [those claims] were also premised on timekeeping and payroll schemes . . . and Plaintiff is thusly entitled to attorneys' fees pursuant to Labor Code § 218.5. Further, the settlement agreement is broad in scope and includes all wage and hour claims." The court found counsel's apportionment of 90 percent of the work to the underlying wage issues "sufficient for apportionment purposes." The court found the number of hours incurred was unreasonable, the hourly rates were high, and $280,794 was a reasonable fee award. The court did not explain how it derived that figure.

Plaintiff submitted a proposed judgment pursuant to the terms of the settlement (Code Civ. Proc., § 664.6). Defendants objected to the proposed judgment on the ground plaintiff did not request fees for an eligible claim in her initial pleading, and defendants were not given an opportunity to argue the attorney fee motion before the court, although it had been continued for hearing after defense counsel's pregnancy leave ended.

The court overruled defendants' objection and entered judgment on August 31, 2018, in the principal sum of $15,375, plus attorney fees of $280,794 and costs of $8,671.95.

**DISCUSSION**

Defendants contend the trial court erred in awarding any attorney fees to plaintiff, because her complaint did not allege any conduct that could serve as the legal basis for a fee award under section 218.5; the parties' settlement agreement provided no other basis for a fee award because plaintiff was entitled only to seek fees "consistent with applicable law"; and there is no evidence that plaintiff's counsel spent any time on any claim for nonpayment of wages.

We agree there was no basis for the trial court's award of fees. As we stated at the outset, section 218.5 mandates an attorney fee award "[i]n any action brought for the nonpayment of wages," if any party requests them at the initiation of the action. (§ 218.5, subd. (a).)[2] *Kirby* tells us that a plaintiff cannot obtain attorney fees in an action for failure to provide rest breaks or meal periods. That is because an action for nonprovision of meal or rest breaks is not an action brought for nonpayment of wages. The remedy for nonprovision of meal or rest breaks is an additional hour of pay (often described in the case law as "premium wages"), but that does not turn a lawsuit for violation of meal or rest breaks into a lawsuit for nonpayment of wages. (*Kirby, supra,* 53 Cal.4th at pp. 1255, 1256-1257, 1259.)

---

[2] "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith." (§ 218.5, subd. (a).)

9

Courts of Appeal since *Kirby* have held a plaintiff also cannot recover penalties for waiting time and wage statement violations in an action for failure to provide rest breaks or meal periods. (*Naranjo v. Spectrum Security Services, Inc.* (2019) 40 Cal.App.5th 444, 474, review granted & depublication denied, Jan. 2, 2020, S258966 (*Naranjo*); *Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242, 1261 (*Ling*).)

In *Ling*, the court held, following *Kirby*, that a claim for waiting time penalties is "purely derivative of" a suit for the unpaid wages from which the penalties arise. (*Ling, supra,* 245 Cal.App.4th at p. 1261.) Since a suit for non-provision of breaks is not a suit for unpaid wages, it cannot be the basis of a claim for waiting time penalties. "We understand that the remedy for a section 226.7 violation [failure to provide breaks] is an extra hour of pay, but the fact that the remedy is measured by an employee's hourly wage does not transmute the remedy into a wage as that term is used in section 203 [waiting time], which authorizes penalties to an employee who has separated from employment without being paid." (*Ibid.*)

Then, in *Naranjo*, the court held that actions for nonprovision of meal or rest periods "do not entitle employees to pursue the derivative penalties in sections 203 [waiting time] and 226 [wage statement violations]." (*Naranjo, supra,* 40 Cal.App.5th at p. 474; see *ibid.* ["[t]he language in sections 200 [defining "wages"], 203 and 226 'is clear and unambiguous' "].) The court concluded that, because the appellants "were not entitled to section 226 derivative penalties, they were not entitled to section 226, subdivision (e) attorney fees." (*Ibid.*)

We agree with *Ling* and *Naranjo* that a plaintiff is not entitled to recover penalties for waiting time and wage statement

10

violations based on claims of nonprovision of rest or meal periods, and likewise cannot obtain attorney fees based on those claims.

Plaintiff, however, does not address these authorities. Instead, she contends, first, that defendants provided an inadequate appellate record. Then she contends the "predicate misconduct" of her causes of action for waiting time and wage statement violations "was not rest period violations," but instead was defendants' "unlawful timekeeping and payroll schemes." Both contentions are without merit.

## 1.     The Inadequate Record Claim

Plaintiff contends the record is inadequate because defendants did not provide reporter's transcripts of three hearings on the attorney fee motion. Plaintiff points to three unreported hearings held on March 8, June 29, and August 31, 2018. Plaintiff asserts that at those three hearings, "the trial court heard and considered arguments and evidence regarding Plaintiff's entitlement to attorney's fees and the reasonableness of the amount sought." Those transcripts are necessary, plaintiff tells us, "to assess the basis of the trial court's fee award." They are not.

The claim that the court "heard and considered . . . evidence" at the March 8 hearing is clearly unfounded. In the absence of the all-purpose judge who presided over this case from the outset, another judge on March 6 granted an ex parte application to select a new hearing date for the attorney fees motion on March 8, when the all-purpose judge would be back in court to reset the hearing. The March 6 minute order states the attorney fees motion "will not be argued on March 08, 2018." Plaintiff's own notice of ruling for the March 8 hearing tells us that it was a hearing on defendants' ex parte application to

11

continue the attorney fee hearing—not a hearing on the attorney fee motion.

The August 31, 2018 hearing was on the order to show cause regarding dismissal, at which defendants' objection to the proposed judgment was overruled. Attorney fees had already been awarded, so there could not have been any evidence presented on that topic.

That leaves the June 29, 2018 hearing. The minute order for that hearing states the court heard arguments from counsel and then continued the hearing to July 13. Plaintiff contends that at the June 29 hearing, the court heard arguments on the merits of the motion. Defendants say there was no argument on June 29. It is immaterial what arguments the court entertained on June 29, because plaintiff does not contend any *evidence* was presented at that hearing. As the cases plaintiff cites show, it is "unreported trial testimony" that results in a judgment "conclusively presumed correct as to all evidentiary matters" (italics omitted), when no error is apparent on the face of the existing appellate record. (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992; see *ibid.* ["To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error."]; see also *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448 [absence of a record "concerning what actually occurred at the trial" precludes a determination that the trial court abused its discretion in determining attorney fees were reasonable].)

In short, the claim that we must affirm the judgment because defendants presented an inadequate record for judicial review is unfounded.

12

## 2. The Predicate Conduct for Plaintiff's Claims

As we have observed, plaintiff does not address the governing legal authorities that bar attorney fees for claims of meal and rest break violations. Instead, she contends "the predicate misconduct" of her wage and hour claims "was not rest period violations," but rather "failure to pay earned wages."

This is a theory reflected nowhere in the record of the attorney fee proceedings—until plaintiff filed her reply papers. And in those reply papers, plaintiff cited no evidence of any work performed before the settlement that referred to or suggested the existence of a claim or cause of action for failure to pay earned wages.

First, the complaint contained no cause of action for the unpaid balance of minimum wage or overtime compensation (§ 1194)—only the cause of action for failure to provide rest periods, and for wage statement and waiting time penalties. The complaint specifically alleged in the wage statement cause of action that defendants knowingly failed to furnish accurate and complete statements "by failing to include her rest break premiums on her itemized wage statements." There was no allegation of failure to pay earned wages.

Plaintiff points out that her waiting time cause of action alleged that defendants failed and refused to pay "the earned and unpaid wages due and owing to Plaintiff." But she omits the remainder of the allegation that states, "including, without limitation, unpaid premium wages in lieu of rest periods." While the allegation is "without limitation," the complaint is devoid of any factual allegations suggesting a failure to pay anything other than premium wages for nonprovision of rest periods—for which attorney fees are not available.

13

Second, at a session of plaintiff's deposition on March 30, 2017, when asked about her discovery compliance, plaintiff confirmed that she had searched only for text messages between her and her former coworkers *regarding rest breaks* (i.e., not *all* messages between them), explaining, "[c]onsidering this is a lawsuit about rest breaks, yes."

Third, on July 18, 2017, plaintiff's counsel emailed defense counsel a demand for settlement. Plaintiff's demand described her "unpaid wage claims" as seeking payment for each missed rest break, plus penalties for the consequent waiting time and wage statement violations. There was no ambiguity on the point; plaintiff did not claim any other unpaid wages—only the premium pay for failure to provide rest breaks. Plaintiff valued her case at $750,000, less than $13,000 of which she attributed to the "unpaid wage claims."[3]

---

[3] Plaintiff contends that it was "improper[] and unethical[]" for defendants to disclose settlement communications that are "blatantly inadmissible," citing Evidence Code section 1154 ("Evidence that a person has accepted or offered or promised to accept a sum of money . . . in satisfaction of a claim, as well as any . . . statements made in negotiation thereof, is inadmissible to prove the invalidity of the claim or any part of it."). But defendants were not trying to prove the invalidity of any claim plaintiff made before the settlement. They were trying to prove that plaintiff *did not make a claim* that entitled her to attorney fees. (See *Fieldson Associates, Inc. v. Whitecliff Laboratories, Inc.* (1969) 276 Cal.App.2d 770, 772, fn. omitted ["Section 1154 makes an offer of compromise inadmissible to show *invalidity* of the claim to which the offer related. Here the letters were not used to prove . . . invalidity of[] the claim concerning which the offer of compromise was made."]; see also *Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1479 [letters "were not offered

Fourth, on September 13, 2017, a month before the case settled, plaintiff and defendants stipulated to the addition of a seventh cause of action for failure to provide meal periods. But at no time did plaintiff ever seek to amend the complaint to add a cause of action for failure to pay earned wages.

To summarize, the appellate record includes nothing indicating a claim for nonpayment of wages until *after* the settlement, and *after* plaintiff filed her motion for attorney fees. The first time plaintiff asserted she had a claim for unpaid wages was in her reply papers. The trial court relied on two exhibits plaintiff filed with those reply papers, finding that this evidence established that her waiting time and wage statement claims "were also premised on timekeeping and payroll schemes." That finding is not supported by the record and consequently was an abuse of discretion.

The exhibits on their face say nothing about nonpayment of wages. Plaintiff's counsel opined that those exhibits show plaintiff "was shorted .49 total hours" in one pay period, and defendants made "unilateral downward adjustments" to her hours on 15 days between 2012 and 2015. Defense counsel disagreed with plaintiff's counsel's interpretation of both exhibits, but, at most, plaintiff's counsel's opinion is post hoc evidence that does nothing to show plaintiff's claims were ever premised on "timekeeping and payroll schemes." There is no evidence plaintiff's counsel ever expended any attorney time on "timekeeping and payroll schemes," except in preparation of the reply papers.

to disprove the merits of the claim under negotiation, but rather 'to show the invalidity of a different claim' "].)

15

Plaintiff resists this conclusion, taking several tacks.

Plaintiff says that defendants admitted "that they failed to issue Plaintiff one or more wage statements," triggering liability under section 226 for wage statement violations. For this claim, plaintiff cites only the September 6, 2017 deposition of Tiffany Yeargin, defendants' senior human resource business partner, who was asked, "Did you ever give [plaintiff] a final paycheck?" Ms. Yeargin responded, "I did not give her a final paycheck." That is plainly not an admission that defendants failed to provide a final wage statement (and plaintiff did not so allege in her complaint); it is merely a statement that Ms. Yeargin did not do so herself.

Plaintiff faults defendants for contending that, at her deposition, plaintiff never testified that she was entitled to compensation for unpaid hours worked. (Defense counsel's February 8, 2018 declaration stated she reviewed plaintiff's deposition transcripts and there was no such testimony.) Plaintiff asserts on appeal that counsel's declaration was a "mistaken recollection of what Plaintiff had testified to" and that defendants "fail to cite to Plaintiff's deposition transcript." But defendants *do* cite to plaintiff's deposition transcript where she testified that "this is a lawsuit about rest breaks," and plaintiff offered no deposition testimony to the trial court to suggest that defense counsel was mistaken, or that plaintiff ever testified about any shortfall in payment of earned wages.

Plaintiff argues she sought attorney fees under sections 218.5 and 226 in her operative complaint. Plaintiff again misses, or ignores, the point. It does not matter that plaintiff cited section 218.5 in her complaint. The point is that she did not allege a cause of action for nonpayment of wages, which is the

16

necessary predicate for an award of fees under section 218.5. Again, plaintiff's argument simply ignores the applicable legal rules and the fact that she neither alleged nor litigated any cause of action or claim for "nonpayment of wages."

Next, plaintiff makes the peculiar argument that under the stipulated judgment, she "was entitled to seek fees for wage-and-hour causes of action 'that **could have been** asserted in the complaint.'" (Boldface & underscore in original.) The judgment says no such thing, and we are at a loss to understand how plaintiff can have incurred any attorney fees for claims that she *could have* but *did not* actually assert or litigate.

Finally, plaintiff contends we must defer to the trial court's finding that counsel's declaration supported the attorney fee award, and we cannot reweigh the evidence that 90 percent of the work was done to litigate the wage and hour claims. But the trial court abuses its discretion if its decision is legally erroneous or if it is unsupported by the record. As we have seen, it was both.

The *only* evidence the court relied on in finding plaintiff was entitled to fees under section 218.5 was the post hoc analysis of "timekeeping and payroll schemes" that plaintiff presented with her reply papers, with no indication when that work was performed. Defendants argue, and we agree, that the record confirms that discovery and motion practice were not directed at any timekeeping and payroll theories, so the record provides no support for the allocation of any attorney time to claims for nonpayment of wages.

Plaintiff argues not all written discovery, and not all deposition transcripts, and not all motion communications that occurred are in the record; "[b]ecause this material evidence is absent from the record on appeal, the Court must presume that

17

Plaintiff presented sufficient evidence to support the trial court's factual finding." That is not the case. The record before us is the same record the parties placed before the trial court, and in the trial court, plaintiff had the burden of proving her entitlement to attorney fees. If the record does not support that entitlement—and it does not—it is the trial record that is inadequate, not the appellate record.

## DISPOSITION

The judgment is reversed to the extent it awards attorney fees to plaintiff, and the cause is remanded for entry of a new and different judgment denying recovery of attorney fees. Defendants shall recover costs on appeal.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


STRATTON, J.

18

Filed 5/21/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RAQUEL BETANCOURT, | B293625 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC629916) |
| v. | |
| OS RESTAURANT SERVICES, LLC et al., | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendants and Appellants. | **[No change in judgment]** |

THE COURT:

  The opinion in the above-entitled matter filed on April 30, 2020, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

  There is no change in the judgment.

_____

BIGELOW, P. J.    GRIMES, J.    STRATTON, J.