Filed 8/15/16  Ludwig v. Hacienda Paraiso CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ARLENE LUDWIG,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>HACIENDA PARAISO,<br><br>   Defendant and Appellant. | B259928<br><br>(Los Angeles County<br>Super. Ct. EC057068 ) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert H. O'Brien, Judge.  Reversed and remanded with directions.

Joseph Daniel Davis; Charlotte E. Costan for Plaintiff and Respondent.

Horvitz & Levy, David M. Axelrad and Eric S. Boorstin; Veatch Carlson and Peter H. Crossin for Defendant and Appellant.

_____

# INTRODUCTION

Arlene Ludwig, an elderly woman, tripped and fell over a single step at the D'Cache restaurant, causing her serious injury. She sued the restaurant's owner, Hacienda Paraiso, and Hacienda Paraiso's principals, Jairo and Nancy Gamba, for negligence, and recovered, after a court trial, almost $10 million. This appeal, however, is not so much about the facts of the case or conduct of the parties. It is primarily about the conduct of the lawyers.

The lawyers engaged in lengthy discovery disputes that delayed the trial. In addition, Hacienda Paraiso and the Gambas filed serial petitions for bankruptcy, which caused further delays.[1] Although each side timely designated expert witnesses, Ludwig did not complete the depositions of Hacienda Paraiso's experts. Ludwig claimed that Hacienda Paraiso did not make its liability and damages experts available for deposition before the expert discovery cut-off. After several trial continuances and the exchange of many contentious letters among counsel, the trial court granted Ludwig's motions in limine to exclude five of Hacienda Paraiso's experts.

We conclude the trial court abused its discretion in excluding Hacienda Paraiso's experts under Code of Civil Procedure section 2034.300, subdivision (d),[2] on the ground that Hacienda Paraiso "unreasonably failed" to make the experts available for deposition. We also conclude that the trial court misinterpreted section 2034.300, subdivision (d), as requiring Hacienda Paraiso not only to make its experts available for deposition, but also to ensure that the depositions of its experts actually occurred. Finally, on the issue of prejudice, we conclude that the trial court's erroneous exclusion of Hacienda Paraiso's damages experts was prejudicial error, but the exclusion of its liability experts was not.

---

[1] Ludwig eventually dismissed Jairo and Nancy Gamba.

[2] Undesignated statutory references are to the Code of Civil Procedure.

Therefore, we reverse the judgment and remand for a new trial on the issue of future damages, both economic and noneconomic, only.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Parties' Experts*

Ludwig filed this action on October 13, 2011.  The court initially set the trial for April 8, 2013, so that the cut-off for expert discovery was March 22, 2013.  (See § 2024.030.)  Ludwig timely designated Sara Guentz, a certified nurse practitioner, to testify about Ludwig's requirements for future assistance and daily care; David Fractor, Ph.D., an economist, to testify about Ludwig's lost earnings and the cost of future medical and health care requirements; and Brad Avrit, a civil engineer, to testify about building codes and safety standards.  Ludwig also designated her three treating physicians, Joel Rosen, Eli Baron, and Steven Drell, as non-retained experts.  Hacienda Paraiso timely designated, among others, the following expert witnesses:  Kenneth Solomon, to testify about "human factors" and the cause of the accident; Tony Stein, to testify about the condition and lighting of the restaurant; John Tyson, to testify about the condition of the premises; Dr. David Patterson, to testify about Ludwig's injuries; Jan Roughan, a life care planner, to testify about the reasonableness and necessity of Ludwig's future medical treatment; and David Weiner, an economist, to testify about Ludwig's working life expectancy, the amount of past and future lost earnings, and the present value of the cost of her future medical care.

The dispute in this appeal concerns the trial court's exclusion of two of Hacienda Paraiso's liability experts, Solomon and Stein, and all three of Hacienda Paraiso's damages experts, Patterson, Roughan, and Weiner.  One of Hacienda Paraiso's liability experts, Tyson, testified at the trial.

3

B.     *The Depositions of Solomon and Stein*

On February 16, 2013, the day after the parties exchanged expert witness information, counsel for Ludwig served deposition notices for Solomon, Stein, and Tyson for March 15, 2013.  Counsel for Hacienda Paraiso notified Ludwig that they were not available on March 15, but offered other dates, all before March 20, 2013.  By the time counsel for Hacienda Paraiso received the new deposition notices, in which counsel for Ludwig accepted the offered dates, Solomon and Stein's availability had changed. So the parties agreed to March 20 for Tyson and March 21 for Solomon and Stein. Ludwig took Tyson's deposition during the morning of March 20, as agreed.  So far, so good.

But then the trouble began.  Although the parties had scheduled Avrit's deposition for the afternoon of March 20, counsel for Ludwig cancelled it while counsel for Hacienda Paraiso was en route to Avrit's office, stating that it was too late in the day to start the deposition.  Because counsel for Hacienda Paraiso believed the parties had agreed to take the depositions in a certain order (first Tyson, then Avrit, then Solomon and Stein), an agreement Ludwig disputes, counsel for Hacienda Paraiso cancelled the March 21, 2013 depositions of Solomon and Stein.  Counsel for Ludwig then informed counsel for Hacienda Paraiso that Avrit was not available until April 23.

Meanwhile, counsel for Ludwig noticed the depositions of Solomon and Stein for April 9, 2013.  Still arguing about whether the parties had agreed to an order for the depositions, counsel for Hacienda Paraiso notified counsel for Ludwig that Solomon and Stein were not available on April 9, but Solomon was available on April 25 or 26 and Stein was available on April 30.  Although counsel for Hacienda Paraiso deposed Avrit on April 23, counsel for Ludwig refused to depose Solomon on April 25 or 26 or Stein on April 30.  Instead, counsel for Ludwig took the position that, because Solomon and Stein did not appear for their depositions on the dates noticed, and because of his mistaken belief at the time that the expert discovery cut-off was April 26 instead of April 29, he would seek to exclude Solomon and Stein from testifying at trial rather than take their

4

depositions in the time that remained before trial.[3]  On May 15, 2013, by which time the court had continued the trial to October 7, 2013, counsel for Hacienda Paraiso offered seven dates in June for Solomon's deposition and 15 different dates in June for Stein's deposition.  Because of counsel for Ludwig's family commitments in June, he declined all of those June dates.  Counsel for Hacienda Paraiso then offered eight dates in July for Solomon and four dates in July for Stein.  Counsel for Ludwig agreed to depose Stein on July 11 and Solomon on July 18.  Problem solved.

   C.     *The Four-Month Bankruptcy Stay*

   Not quite.  On July 2, 2013 Jairo Gamba filed for bankruptcy.  On July 9, 2013 counsel for Hacienda Paraiso, believing the depositions of Solomon and Stein could not proceed without violating the automatic bankruptcy stay, notified counsel for Ludwig of Hacienda Paraiso's position that all discovery was stayed.  Counsel for Ludwig disputed that the bankruptcy of one defendant stayed the action against the other defendants.

   Meanwhile, when the automatic stay caused by Jairo Gamba's bankruptcy ended on August 22, 2013, Nancy Gamba filed for bankruptcy on August 27, 2013.  Then Hacienda Paraiso filed for bankruptcy on September 18, 2013.  In light of Hacienda Paraiso's bankruptcy, the court vacated the October 7, 2013 trial date.

---

[3]     On March 22, 2013 the trial court had continued the trial to May 13, 2013 and the expert discovery cut-off to April 29, 2013.  The trial court subsequently granted another short continuance of the trial to June 3, 2013, and counsel for Hacienda Paraiso believed that the court also extended the expert discovery cut-off to May 20, 2013.  Counsel for Ludwig disagreed.  On April 26, 2013 the trial court again continued the trial to October 7, 2013 and extended the discovery cut-off, but only with respect to a new fall that Ludwig had suffered in March 2013.  The court did not specify a cut-off date for that discovery, but counsel for Hacienda Paraiso believed the court had continued the expert discovery cut-off date to September 9, 2013. Counsel for Ludwig took the position that the court had not continued the expert discovery cut-off at all.

The last bankruptcy stay was lifted on October 25, 2013. On November 22, 2013 the court reset the trial for February 3, 2014. Counsel for Ludwig did not contact counsel for Hacienda Paraiso about scheduling the remaining depositions. Nevertheless, on December 9, 2013 counsel for Hacienda Paraiso offered December 17, 20, 23, or 24 and January 2, 2014 for the deposition of Solomon, and January 7, 8, 10, 14, and 15, 2014 for the deposition of Stein. Counsel for Ludwig did not respond.

On December 20, 2013 counsel for Hacienda Paraiso again contacted counsel for Ludwig and offered additional deposition dates for Solomon and Stein. Counsel for Ludwig declined to take the deposition of either witness on any of the proposed dates, claiming he would not have enough time to prepare Avrit after the depositions of Solomon and Stein because he was busy preparing for trial during January 2014. The trial continuances, however, were not over. On January 24, 2014 the court continued the trial to April 1, 2014 because counsel for Hacienda Paraiso had a conflict, and in March 2014 the court continued the trial to May 12, 2014 pursuant to the parties' stipulation. Yet, none of the attorneys made any further attempt to depose Solomon or Stein between December 2013 and May 2014.

D.   *The Depositions of Patterson, Roughan, and Weiner*

But there's more. Counsel also fought over deposition dates for Hacienda Paraiso's damages experts, Patterson, Roughan, and Weiner, and again the dispute involved deposition priority. This time, counsel for Hacienda Paraiso claimed that Ludwig's physical examination had to occur before the depositions of Patterson and Roughan, because the physical examination would be the basis of their opinions on the extent of Ludwig's injuries, as well as Weiner's opinion on the cost of treatment.

So: Counsel for Hacienda Paraiso originally scheduled Ludwig's physical examination for a date (March 8, 2013) that gave Ludwig over 30 days' notice. Less than a week before the scheduled examination, counsel for Ludwig cancelled. The parties rescheduled the examination for March 17, 2013 in Ludwig's home. On March 15, 2013

6

counsel for Ludwig suggested that they move the examination to March 18, 2013, but Hacienda Paraiso's experts were not available that day. On March 16, 2013 counsel for Ludwig cancelled the physical examination, claiming that Ludwig had recently fallen and now needed an MRI, which was scheduled for March 17, 2013. Counsel rescheduled the examination for April 13, 2013. On April 4, 2013 counsel for Ludwig cancelled the April 13 examination because "[s]omething ha[d] come up," and offered April 14 for the examination. Roughan examined Ludwig on April 14, and Patterson examined Ludwig on April 17, 2013.

Meanwhile, counsel for Ludwig noticed the depositions of Patterson, Weiner, and Roughan for April 25 and 26, 2013. Counsel for Hacienda Paraiso informed counsel for Ludwig that these experts were not available on those dates, but stated that Patterson was available on May 17, and that he would provide dates for the other experts the next day. Counsel for Ludwig responded that if Patterson, Roughan, and Weiner did not appear for depositions on April 25 and 26, he would move to exclude their testimony. Counsel for Hacienda Paraiso again offered May 17 for Patterson and promised to provide other dates, all of which would be before May 20, 2013, the date counsel for Hacienda Paraiso believed was the new expert discovery cut-off associated with the June 3, 2013 trial date. Counsel for Ludwig refused to take the depositions of Patterson, Roughan, and Weiner in May because counsel for Ludwig claimed the expert discovery cut-off date was April 29, 2013.

On May 21, 2013, after the court had continued the trial from June 3, 2013 to October 7, 2013, counsel for Hacienda Paraiso again offered to make Patterson, Roughan, and Weiner available before September 9, 2013, which counsel for Hacienda Paraiso believed was the new expert discovery cut-off. Counsel for Ludwig again responded that he would seek to exclude the three experts from testifying at trial rather than take their depositions.

On December 20, 2013, after the bankruptcy stay had been lifted and when the trial was set for February 3, 2014, counsel for Hacienda Paraiso again contacted counsel for Ludwig and stated that Patterson, Roughan, and Weiner were available for deposition in January 2014. Counsel for Ludwig did not respond. None of the attorneys made any further attempt to depose Patterson, Roughan, and Weiner between December 2013 and May 2014.

E.      *The Motions in Limine and the Trial*

Ludwig filed more than 20 motions in limine, including motions to exclude the testimony of Solomon and Stein, and Patterson, Roughan, and Weiner. The trial court granted the motions to preclude the experts from testifying, ruling that Hacienda Paraiso had not made any of the experts available for deposition. The court stated: "At that point you had these trials, people were trying to prepare for trial. You can't . . . wait all that distance and then expect someone to just keep going along with you with any offers you might make. It's unreasonable. It's not fair." When counsel for Hacienda Paraiso pointed out that nothing prevented Ludwig from deposing its experts, the court responded: "Except he may be preparing for trial. I don't know. Anyway, those are the rulings."

The parties stipulated to a court trial. Avrit testified about the hazards of the step, the poor lighting conditions in the restaurant, the inadequacy of the handrail, and how a ramp would have eliminated the safety hazard. Ludwig's treating doctors Rosen and Drell, and nurse Guetz, testified about the nature of Ludwig's injuries and the cost of Ludwig's future care. Tyson, the sole Hacienda Paraiso liability expert to testify, stated that the lighting in the restaurant was more than sufficient, and he noted that there were other "visual clues" for the step, such as the handrail and the red tape on the nose of the step.

8

The trial court found that Hacienda Paraiso was negligent for not replacing the step with a ramp. The trial court also concluded that Hacienda Paraiso "presented little or no evidence supporting any of its affirmative defenses," including comparative fault. Nevertheless, the court found Ludwig 40 percent negligent because she was walking at a fast pace, she would have seen the step had she been watching where she was walking, and she should have walked slower if she were unable to see where she was going. The court accepted Ludwig's evidence of her economic damages, finding that Hacienda Paraiso "presented no independent evidence" on the issue. The trial court found that Ludwig was entitled to $4,301,259 in future medical expenses, $1,262,376 in past medical expenses, $656,073 in future lost earnings, $332,880 in past lost earnings, $2 million in past noneconomic damages, and $8 million in future noneconomic damages, for a total of $16,552,588.11. The court then awarded her 60 percent of this amount, for a total award of $9,931,552.87.

On October 24, 2014 the court denied Hacienda Paraiso's motion for a new trial. The court entered a final amended judgment on November 20, 2014. Hacienda Paraiso timely appealed.

## DISCUSSION

### A. *Applicable Law and Standard of Review*

Section 2034.300, subdivision (d), provides that, "on objection of any party who has made a complete and timely compliance with Section 2034.260 [expert witness disclosures], the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to . . . [m]ake that expert available for a deposition . . . ." (§ 2034.300, subd. (d).) Whether a party has unreasonably failed to make its experts available for deposition depends on the conduct of both parties, including the appearance of gamesmanship of the party delaying or preventing the deposition, and the exacerbating behavior of the objecting party. (See

9

*Staub v. Kiley* (2014) 226 Cal.App.4th 1437, 1447 (*Staub*) ["[f]ailure to comply with [expert witness rules] may be found to be 'unreasonable' when a party's conduct gives the appearance of gamesmanship, such as undue rigidity in responding to expert scheduling issues"]; *Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 953 (*Boston*) ["[t]he behavior of the party seeking to exclude the expert testimony is relevant to the reasonableness inquiry," and the court is less likely to find the party offering expert testimony acted unreasonably if its noncompliance with the statute was exacerbated by the party seeking exclusion].)

We review the trial court's ruling on a motion to exclude an expert for abuse of discretion, including the court's determination that a party unreasonably failed to comply with an expert witness demand. (*Staub, supra,* 226 Cal.App.4th at p. 1445.) Although governing statutes limit a trial court's discretion, when the exclusion of expert testimony rests on a matter of statutory interpretation, we review the trial court's ruling de novo. (*Ibid.*; see *Boston, supra*, 170 Cal.App.4th 936 at p. 950.) Therefore, we review the trial court's finding under section 2034.300, subdivision (d), that Hacienda Paraiso acted unreasonably for abuse of discretion, and, to the extent the question requires an interpretation of section 2034.300, subdivision (d), we review the trial court's ruling de novo.

B. *Hacienda Paraiso Did Not Unreasonably Fail To Make Its Experts Available for Deposition*

The trial court excluded the testimony of Solomon, Stein, Patterson, Roughan, and Weiner because the court concluded it was "unreasonable" and "unfair" for Hacienda Paraiso to require Ludwig to take expert depositions when "people were trying to prepare for trial." The court's ruling was an abuse of discretion.

### 1.    *Solomon and Stein*

Although the actions of counsel for Hacienda Paraiso delayed the Solomon and Stein depositions, counsel's conduct did not amount to a "comprehensive attempt to thwart the opposition from legitimate and necessary discovery." (*Staub*, *supra*, 226 Cal.App.4th at p. 1447.)  After exchanging letters and emails, the parties agreed that counsel for Ludwig would depose Solomon and Stein on March 21, 2013.  Counsel for Ludwig deposed one of Hacienda Paraiso's experts, Tyson, on the morning of March 20, but then abruptly cancelled the afternoon deposition of Avrit.  Counsel for Hacienda Paraiso responded by cancelling the depositions of Solomon and Stein because he believed the parties had agreed to a certain order of liability expert depositions.[4]

After the court continued the trial date to October 2013, counsel for Hacienda Paraiso offered many dates in June and July 2013 for the depositions of Solomon and Stein, and the parties finally agreed to some dates in July.  Counsel for Hacienda Paraiso did cancel the July depositions of Solomon and Stein because of the bankruptcy stay, but he also made numerous attempts thereafter to make the two experts available for deposition.  Throughout the litigation, counsel for Hacienda Paraiso offered (by our count) over 22 dates for Solomon's deposition, including March 21, April 25, and April 26, 2013; seven dates in June 2013; eight dates in July 2013; and four dates in December 2013.  Counsel for Hacienda Paraiso also proposed at least 26 different dates for Stein's deposition, including March 21 and April 30, 2013; plus at least 15 dates in June 2013; four dates in July 2013; and five dates in January 2014.  Putting aside the parties' differing views on the expert discovery cut-off date, counsel for Hacienda Paraiso offered many of these dates at times when the trial was still weeks or months

---

[4]    The Discovery Act does not recognize "priority" based on notice (see § 2019.020, subd. (a)), but the parties may agree to an order of depositions appropriate for the case. Although the record reflects that the parties agreed to an order for some of the depositions (for example, Ludwig's treating physicians after Ludwig's medical examination), the parties dispute whether there was an agreement regarding the order of the depositions of Tyson, Avrit, Stein, and Solomon.

away. Although counsel for Hacienda Paraiso, perhaps mistakenly and certainly stubbornly, insisted that the depositions proceed in an order to which the parties may not have agreed, he did not prevent counsel for Ludwig from deposing Hacienda Paraiso's expert witnesses.

The conduct of counsel for Hacienda Paraiso did not rise to the level of an unreasonable failure to make experts available for deposition. Courts generally have excluded expert witnesses from testifying at trial only when the conduct is so severe that it amounts to "a comprehensive attempt to thwart the opposition from legitimate and necessary discovery." (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1117.) For example, in *Zellerino*, the attorney for the plaintiff failed to timely disclose the plaintiff's experts, violated a court order to disclose them, and continued to refuse to disclose the identity of the plaintiff's expert witnesses until six days before trial, at which time counsel for the plaintiff told counsel for the defendant not to even bother asking to depose the plaintiff's experts. (*Id.* at pp. 1103, 1112-1113.) The court in *Zellerino* stated: "Given the near-total failure to comply with the requirements of the statute, we conclude the order preventing [the plaintiff] from introducing expert testimony was within the court's discretion, even though the effect was that it terminated her lawsuit." (*Id.* at p. 1117.) Similarly, in *Waicis v. Superior Court* (1990) 226 Cal.App.3d 283 the expert witness caused the attorneys to reschedule his deposition five times, and then violated a court order to be available all day on Saturday to complete his deposition. The court concluded that the exclusion of the expert witness was a "'last straw' decision" and "a thoughtful response to an unvarying pattern of behavior." (*Id.* at p. 287.)

Ludwig contends that counsel for Hacienda Paraiso was unreasonable because Hacienda Paraiso interpreted the bankruptcy code to require a stay of proceedings against all the defendants when only one defendant (at a time) filed for bankruptcy protection. Ludwig argues that any competent lawyer knows that a bankruptcy proceeding against one defendant does not stay the litigation against all the defendants. Whether counsel for Hacienda Paraiso was correct on this point of bankruptcy law, however, is not the issue.

12

The issue is whether cancelling the expert depositions during the pendency of bankruptcy proceedings was unreasonable. And it wasn't. Hacienda Paraiso's position had legal support. (See, e.g., *In re Nat. Century Financial Enterprises* (6th Cir. 2005) 423 F.3d 567, 578 [bankruptcy stay applies to debtor's co-defendants when "a judgment against the solvent codefendants would actually deplete the bankruptcy estate"]*; Queenie, Ltd. v. Nygard Intern.* (2d Cir. 2003) 321 F.3d 282, 287-288 [when debtor files for bankruptcy, automatic stay applies to action against debtor's wholly owned corporation]; *A.H. Robins Co., Inc. v. Piccinin* (4th Cir. 1986) 788 F.2d 994, 999 [exception to the general rule that bankruptcy of one party does not stay litigation against all parties applies "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor*"*].)[5] Indeed, the trial court thought Hacienda Paraiso's position had enough merit to postpone the trial until after the bankruptcy stay had ended, hardly an indication that Hacienda Paraiso's counsel was acting unreasonably.

Ludwig also argues that counsel for Hacienda Paraiso acted unreasonably because the dates counsel for Hacienda Paraiso offered for the depositions of Solomon and Stein were too close to trial and would have required counsel for Ludwig to take expert depositions while he was busy preparing for trial. Ludwig's chronology is suspect. Counsel for Hacienda Paraiso contacted counsel for Ludwig to arrange for the depositions of Solomon and Stein after the bankruptcy stays had been lifted and the court had set a new trial date for February 3, 2014. Such conduct demonstrates a desire to have depositions occur, not to prevent them from occurring. Although Ludwig faults Hacienda Paraiso for waiting from October 2013, when the last bankruptcy stay ended, until December 2013 to make the overture, counsel for Ludwig did not have to wait for an

---

[5]     The authorities on which Ludwig relies stand only for the general rule that the bankruptcy of one party does not stay an action against other parties. (See, e.g., *Freiberg v. Mission Viejo* (1995) 33 Cal.App.4th 1484, 1488.)

invitation. He could have asked counsel for Hacienda Paraiso for deposition dates immediately after the last bankruptcy stay ended, or at some other time. Yet, counsel for Ludwig declined counsel for Hacienda Paraiso's December 2013 offer. And in January 2014, when the court continued the trial to April 2014, and in March 2014, when the court again continued the trial to May 12, 2014, counsel for Ludwig still made no effort to depose Solomon or Stein.

Moreover, courts routinely find that delays requiring expert depositions to occur close to trial, even after the statutory cut-off, are not necessarily unreasonable and do not justify exclusion of a party's experts. For example, in *Staub, supra*, 226 Cal.App.4th 1437, the trial court excluded the plaintiffs' experts because the attorney for the plaintiffs disclosed them late and was unavailable for deposition until close to trial. (*Id.* at pp. 1439, 1442.) The defendants declined to depose the experts because "such late depositions would not permit [the defendants] to engage in their customary process of evaluating settlement options by committee," and the depositions of the belatedly disclosed experts could not occur prior to the expert discovery cut-off. (*Id.* at pp. 1442-1443.) The Court of Appeal reversed, concluding that, "while [counsel for the plaintiffs'] late arrangements for experts are not evidence of an ideal practice, they do not show an attempt to thwart defendants' discovery." (*Id.* at p. 1447.)

Similarly, in *Boston*, *supra*, 170 Cal.App.4th 936, the trial court permitted the plaintiff's expert witnesses to testify at trial, even though the plaintiff failed to produce her expert witness reports until just before trial. (*Id.* at p. 949.) At a Friday hearing on the defendant's motion in limine to exclude the plaintiff's expert, the trial court ordered the plaintiff to make her expert available for deposition over the weekend, before trial commenced on Monday. (*Ibid.*) The defendant declined to take the depositions because "it was on the eve of trial" and would have been expensive, and instead the defendant "decided to put all [its] eggs into this motion basket . . . ." (*Id.* at pp. 953-954.) The Court of Appeal affirmed, finding that the defendant had been given a meaningful

14

opportunity to depose the plaintiff's expert and the failure to take the expert's deposition was the defendant's "strategic choice." (*Id.* at p. 954.)

Here, as in *Staub* and *Boston*, it would not have been unreasonable for counsel for Ludwig to take depositions after the discovery cut-off. Despite an April 29, 2013 expert discovery cut-off date, the court continued the trial date several times, creating repeated opportunities for Ludwig to take the depositions of Hacienda Paraiso's expert witnesses weeks, and even months, before trial. Moreover, contrary to Ludwig's argument and the court's finding that it was "unfair" to require counsel for Ludwig to depose the experts so close to trial, the discovery statutes envision exactly that. Parties normally conduct expert discovery during a very short window of time between the disclosure of experts, which is 50 days before trial, and the expert discovery cut-off date, which is 15 days before trial. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 8:1691.) And expert depositions after the discovery cut-off, and even during the trial, are not uncommon. (See, e.g., *Staub*, *supra*, 226 Cal.App.4th at p. 1448; *Boston*, *supra*, 170 Cal.App.4th at pp. 949, 954; *Fatica v. Superior Court* (2002) 99 Cal.App.4th 350, 353 [continuation of expert's deposition during trial was reasonable alternative to exclusion of the expert's testimony].)

Finally, Ludwig analogizes this case to *Cottini v. Enloe Medical Center* (2014) 226 Cal.App.4th 401. *Cottini*, however, is nothing like this case. In *Cottini*, the plaintiff refused to disclose his experts, citing a conflict of interest on the part of the attorney for the defendant, and continued to refuse to disclose them even after the court denied his motion for disqualification. (*Id.* at p. 406.) The plaintiff did not disclose his experts until shortly before trial, and then moved to continue the trial, primarily so he could conduct discovery, but also to make his experts available for deposition. (*Id.* at pp. 409-411.) The trial court denied the motion and excluded the plaintiff's experts because it would have been "highly prejudicial to . . . expect [the defendant] to go through trial with experts that weren't disclosed until after discovery cutoff." (*Id.* at pp. 414-415.) The Court of Appeal affirmed: "By waiting until after the expert cutoff date to disclose his

15

expert witnesses, [the plaintiff] prevented [the defendant] from deposing these witnesses, making them unavailable for deposition. And while it may not have been unreasonable for [the plaintiff] to seek disqualification of [the defendant's] attorneys . . . it was unreasonable for him to use the disqualification motion as a reason not to disclose expert witness information until after the cutoff date for expert discovery." (*Id.* at p. 423.)

Unlike the plaintiff in *Cottini*, Hacienda Paraiso not only timely disclosed its experts, but also offered multiple deposition dates, both before the April 29, 2013 expert cut-off and many times in the months leading up to the trial. And, unlike the attorney for the party seeking to preclude the expert witnesses in *Cottini*, the conduct of counsel for Ludwig substantially contributed to his inability to complete expert discovery. (See *Boston, supra*, 170 Cal.App.4th at p. 953.) Counsel for Ludwig's last-minute cancellation of Avrit's deposition, rigid refusal to take the depositions of Solomon and Stein a few weeks later in April 2013 (even before the April 29 expert discovery cut-off), and continued refusal to reschedule them after the bankruptcy stay had been lifted were just as, if not more, responsible for the expert deposition deadlock. Counsel for Ludwig's failure to depose Hacienda Paraiso's expert witnesses was not due to Hacienda Paraiso's unreasonable failure to make them available, but to his strategic decision to gamble on a motion to exclude the experts. This course of conduct undermines counsel for Ludwig's assertion that Hacienda Paraiso acted unreasonably. (See *Staub*, *supra,* 226 Cal.App.4th at p. 1448 ["strategic choice" not to depose opponent's experts close to trial date exacerbated any unfairness by opponent's late disclosure]; *Boston*, *supra*, 170 Cal.App.4th at 954 [defendant's decision to "put all [its] eggs into [a] motion basket" instead of deposing expert close to trial was unreasonable].)

### 2. *Patterson, Roughan, and Weiner*

Nor did Hacienda Paraiso unreasonably fail to make damages experts Patterson, Roughan, and Weiner available for deposition. Those depositions could have occurred before the April 29, 2013 expert discovery cut-off had counsel for Ludwig not repeatedly

16

cancelled Ludwig's physical examination. Thus, counsel for Ludwig, not counsel for Hacienda Paraiso, caused that initial delay. Counsel for Ludwig, not counsel for Hacienda Paraiso, acted unreasonably in refusing to depose Hacienda Paraiso's damages experts on any of the May 2013 dates that counsel for Hacienda Paraiso offered. After the court continued the trial from June 3 to October 17, 2013, counsel for Hacienda Paraiso again offered to make Patterson, Roughan, and Weiner available for deposition, and then, after the bankruptcy stay was lifted, offered deposition dates in January 2014. Counsel for Ludwig again acted unreasonably by not responding to counsel for Hacienda Paraiso's offer or making any attempt between December 2013 and May 2014 to take the depositions. (See *Boston*, *supra*, 170 Cal.App.4th at p. 953.) As with Solomon and Stein, the trial court abused its discretion in excluding the testimony of Roughan, Patterson, and Weiner.

C. *The Trial Court Also Erred by Applying the Wrong Legal Standard in Excluding Hacienda Paraiso's Expert Witnesses*

In excluding Hacienda Paraiso's expert witnesses, the court ruled that Hacienda Paraiso not only violated section 2034.300, subdivision (d), by unreasonably failing to make its experts available for deposition, but also by failing (1) to ensure that Ludwig deposed its experts and (2) to file a motion to extend the discovery cut-off if Ludwig could not take the depositions before the cut-off. At the hearing on Ludwig's motions in limine, the trial court stated: "In my opinion, the defendants have the responsibility all through last year, beginning at least with April 29th, to see to it that . . . the depositions of Solomon and . . . Stein were taken as well as the three damage experts. . . . The defendant had that opportunity all last year and didn't make . . . a motion to open up discovery again, and you didn't do it at any time." Both rulings were legally incorrect.

First, Hacienda Paraiso did not have the responsibility to ensure that Ludwig deposed its experts. Section 2034.300 requires a party to provide an opportunity for the opposing party to depose its expert witnesses. (See *Boston*, *supra*, 170 Cal.App.4th at

17

p. 954 ["opportunity for meaningful deposition is one of the circumstances the trial court should consider when making the reasonableness determination"].)  The statute does not require a party to ensure that the opposing party actually takes the depositions.  Indeed, there may be reasons for not taking the deposition of an opposing party's experts, including the cost of the deposition, how important or controversial the expert is, the expert's reputation, the nature and content of the expert's report, and the strategic decision to withhold until cross-examination at trial damaging material the opposing party may have obtained about the expert.  (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 8:1688.)  And, as Hacienda Paraiso correctly observed at the hearing on the motions in limine, there is no procedure for making a motion to compel the opposing party to take a deposition.

Second, the trial court erred in ruling that Hacienda Paraiso should have filed a motion to continue the expert discovery cut-off date.  As counsel for Hacienda Paraiso again explained at the hearing, Hacienda Paraiso did not file a motion to extend the expert discovery cut-off because it did not want or need to conduct any more expert discovery.  Ludwig did not file a motion to extend the expert discovery cut-off because Hacienda Paraiso never refused to allow Ludwig to depose its experts after the cut-off.  Moreover, the discovery statutes allow the parties, without court approval, to extend the time for expert discovery.  (§ 2024.060; see *Fairmont Ins. Co. v. Superior Court* (2000) 22 Cal.4th 245, 250 ["although discovery as of right is precluded after the cutoff, parties may agree to extend the time for completion of discovery proceedings or to reopen discovery"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶¶ 8:1691-8:1692 [because of the "limited 'time window' within which to depose opposing experts," it is "possible to relieve the time pressure somewhat by stipulating to waive the CCP 2024.030 'cut off' dates, which would allow depositions to be taken right up until the trial date"].)  The fact that Hacienda Paraiso could not force Ludwig to stipulate to take expert depositions after the expert discovery cut-off  does not

18

mean that Hacienda Paraiso violated section 2034.300 by not making a motion to extend the expert discovery cut-off.

Ludwig also argues that Hacienda Paraiso should have brought a motion under section 2024.050 to reopen discovery. A motion under section 2024.050, however, is for parties *seeking* discovery. (See §§ 2024.050, subds. (a), (b)(2) [on a motion to reopen discovery, the "court shall take into consideration . . . the diligence or lack of diligence of the party seeking the discovery"].) Ludwig was the party seeking to depose Hacienda Paraiso's experts. Therefore, Ludwig, not Hacienda Paraiso, would have been the party to make such a motion.[6] Moreover, under section 2024.050, subdivision (b)(4), where, as here, there is ample time between an initial trial date and a new trial date, parties should be able to complete discovery without a formal extension of the cut-off. (See § 2024.050, subd. (b)(4) [in exercising discretion to extend discovery, the court shall consider length of time elapsed between date previously set and date presently set for trial].)

D.      *The Erroneous Exclusion of Hacienda Paraiso's Liability Experts Was Harmless, but the Erroneous Exclusion of Its Damages Experts Was Not*

"The trial court's error in excluding evidence is grounds for reversing a judgment only if the party appealing demonstrates a 'miscarriage of justice'—that is, that a different result would have been probable if the error had not occurred." (*Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1480; see Cal. Const., art. VI, § 13; *Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, 1556; *Dee v. PCS Property Management, Inc.* (2009) 174 Cal.App.4th 390, 406.) Even where

---

[6]     Indeed, when Ludwig impeded Hacienda Paraiso's efforts to depose Ludwig's experts before the March 22, 2013 cut-off date, and the April 2013 trial date was looming, Hacienda Paraiso filed a motion to continue the trial date and extend the discovery cut-off, which the court granted. (See Cal. Rules of Court, rule 3.1332(c)(6) [party may seek to continue trial for excused inability to obtain essential testimony or other evidence despite diligent efforts].)

the trial court errs in excluding an expert's testimony, "the error is not reversible unless it is reasonably probable that a result more favorable to the appellant would have been reached without the error." (*Maatuk v. Guttman* (2009) 173 Cal.App.4th 1191, 1199.)

### 1. *The Exclusion of Solomon and Stein Was Harmless*

Hacienda Paraiso argues that the trial court's error in excluding Solomon and Stein was prejudicial because their expert opinions were the bulk of its evidence on the reasonableness of its conduct and Ludwig's comparative fault. Because the testimony of Solomon and Stein would have been cumulative on both issues, however, the trial court's exclusion of their testimony was harmless.

On the issue of Hacienda Paraiso's negligence, Avrit testified about the hazards of single steps like the one at D'Cache restaurant. He also testified that inadequate lighting and an insufficient handrail increased the hazard of the single step in the pathway from the restaurant's front door to the bathroom. In his opinion, replacement of the step with a ramp would have removed the unsafe condition.

To rebut Avrit's testimony, Tyson testified about the various light sources illuminating the step, including light coming in from a large window, skylights, open doors, an overhead light in the foyer, sconces on the wall, the dining room light, and LED rope lighting in the area of the step. In his opinion, the step was not dangerous because it was illuminated at a safe lighting level. Although the trial court ruled that Tyson could testify about lighting conditions but not visual clues that could warn restaurant customers about the step because Solomon and Stein had been designated to testify about those issues, the court allowed Tyson to testify that, during his inspection of the premises, he saw a handrail near the step and red and black tape on the step. Counsel for Hacienda Paraiso also showed the court the "visual clues" in photographs of the restaurant that the court admitted into evidence.

It is hard to see what Solomon and Stein could have added to Tyson's testimony about, and to the photographs showing, the step's conditions, surroundings, and "visual

20

clues." To the extent "human factors" witnesses like Solomon and Stein provide testimony that is "beyond common experience" (Evid. Code, § 801, subd. (a)) of a trier of fact looking at photographs, their testimony would have been cumulative. According to Hacienda Paraiso's offer of proof submitted in response to the court's tentative decision, Solomon would have testified that, in addition to all of the sources of light for the step, there were visual clues warning of the step, including a handrail, pattern changes between the two floor levels, and black and red tape at the step's nose, all of which any nonexpert witness could describe and any trier of fact could see in the photographs.[7] Tyson, however, already testified about the lighting, the handrail, and the tape, and the court saw those "visual clues" in the photographs. In addition, the restaurant manager testified that there was a "watch your step" sign and that she and other employees often told customers to watch their step. Stein's proposed testimony about lighting and Ludwig's ability to see the step when she came into the restaurant, to the extent such testimony requires expertise,[8] also would have been cumulative.[9]

---

[7] Much of Solomon's proposed testimony, as described in Hacienda Paraiso's offer of proof, was also of questionable admissibility. For example, Solomon would have testified that Ludwig entered the restaurant to use the restroom, tripped on a step on the way to the restroom, and "should have been aware of the step," all of which lacked foundation. Hacienda Paraiso also stated that Solomon, at a site inspection, observed "a handrail, rope light, LED rope, circular light, multiple light sources from various directions, contrasting material and discernible pattern changes between the two floors, and black and red tape at the step's nose," all of which the court could see in photographs of the scene and none of which "is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).)

[8] Although phrased in terms of "foot candles," Stein's proposed testimony was essentially that it was darker outside the restaurant than it was inside, and that it would take time for Ludwig's eyes to adapt.

[9] Hacienda Paraiso does not contend that any of its experts would have testified about the content or possible violation of building codes. The trial court ruled before trial that neither side could present expert testimony regarding the applicability or any violation of building codes, because that was a legal issue for the court.

21

On the issue of Ludwig's comparative fault, the testimony of Solomon and Stein also would have been cumulative. The court found that Ludwig was familiar with the restaurant, had previously been warned to watch her step, and was walking at a fast pace to the restroom when she tripped over the step. The court determined that a reasonable person would have paid more attention and slowed down. According to Hacienda Paraiso's offer of proof, Solomon would have testified that Ludwig should have been aware of the step because she had been to the restaurant several times. The court came to this conclusion without Solomon's testimony. In addition, Solomon would have testified, contrary to Avrit, that given Ludwig's gait, speed, perception, and reaction times, Ludwig would have fallen even if a ramp had been in place. Hacienda Paraiso does not argue, however, that Solomon would have testified that Ludwig was negligent because, for example, she was running or talking on the phone. Thus, it is not probable that his testimony about her gait, speed, and perception would have been different from the evidence the court heard. Although Stein would have contradicted Avrit's testimony that Ludwig would have needed to adjust her vision when she entered the restaurant, Ludwig testified that she did not need time for her eyes to adjust when she entered the restaurant.

## 2. *The Exclusion of Patterson, Roughan, and Weiner Was Prejudicial*

The exclusion of Hacienda Paraiso's damages experts, however, was not harmless. The trial court's decision was based in part on the fact that Hacienda Paraiso "presented no independent evidence" on damages. The total damages award to Ludwig was $9,931,552.87. In addition to its award of past medical expenses, past lost earnings, and noneconomic damages, the court awarded substantial future damages based on Ludwig's evidence. The trial court calculated Ludwig's future damages as $4,301,259 in future medical expenses, $656,073 in future lost earnings, and $8 million in future pain and suffering (subsequently reduced by 40 percent for Ludwig's comparative negligence). Because Hacienda Paraiso presented no evidence to contradict Ludwig's calculations of her future damages, it is reasonably probable that the trial court would have reached a

22

different result had it allowed Patterson, Roughan, and Weiner to testify.  (See *Zhou v. Unisource Worldwide, Inc.*, *supra*, 157 Cal.App.4th at p. 1480.)

Roughan, Patterson, and Weiner would have testified about Ludwig's future medical expenses and future lost earnings.  According to Hacienda Paraiso's offer of proof, the three experts would have testified that, in light of Ludwig's abilities, life expectancy, and the reasonable cost of her care, her future medical expenses were $771,494 (as opposed to $4,301,259), and her future lost earnings were $108,497 (as opposed to $656,073).  Specifically, Patterson, the doctor, would have testified that Ludwig had pre-existing medical issues, including degenerative arthritis and osteoporosis, which the court should have considered in calculating how much of Ludwig's future medical care arises from this accident.  Roughan, the nurse, would have testified that the cost of Ludwig's future medical care was less than the cost stated by Ludwig's experts.  For example, Roughan would have testified that Ludwig did not need, as Ludwig's experts claimed, a membership to Equinox Spa and a personal trainer, nor did she need a 24-hour nurse's aide; a less expensive personal care attendant was sufficient.  Roughan also would have disagreed with the predicted cost of future treatment for fractures and annual emergencies.  Weiner, the economist, would have testified that Ludwig would not have worked until age 80, as Ludwig's experts had opined, and he would have explained the calculations behind the smaller figures for future medical expenses and future lost income.  The trial court's erroneous exclusion of all of Hacienda Paraiso's damages expert witness testimony left Hacienda Paraiso with no ability to counter the opinions and calculations of Ludwig's experts.  Thus, it is reasonably probable that, had Hacienda Paraiso's damages experts testified, the award against Hacienda Paraiso for future damages would have been less.

Therefore, Hacienda Paraiso is entitled to a new trial on future damages, at which both sides' experts may testify about the reasonableness and necessity of Ludwig's

23

claimed future medical expenses and future lost income.[10]  Although the proposed testimony of the expert witnesses the trial court excluded related only to future economic damages, the new trial should be on the amounts of both economic and noneconomic damages, because the cost of medical care is often relevant to assessing a plaintiff's noneconomic damages.  (See *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 11 ["the cost of medical care often provides both attorneys and juries in tort cases with an important measure for assessing the plaintiff's general [i.e., noneconomic] damages"]; *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1333 ["[l]awyers have used the amount of economic damages as a point of reference in their argument to a jury . . . as a means to help determine the amount of noneconomic damages"]; *Philip Chang & Sons Assocs. v. La Casa Novato* (1986) 177 Cal.App.3d 159, 167.)  Indeed, in his closing argument, counsel for Ludwig specifically asked the court to use the amount of economic damages in determining the amount of noneconomic damages.  Counsel for Ludwig argued, "I think the general damage in this case at least has to equal the 7.5 million dollars [in] special damages."  We therefore remand for a new trial on all of Ludwig's future damages, including future medical expenses, future lost earnings, and future noneconomic damages.[11]

---

10     Hacienda Paraiso, in its discussion of the court's exclusion of its damages experts, challenges only the court's findings on future economic damages.  As noted, Hacienda Paraiso's offer of proof indicated that the proposed testimony of its damages experts related only to future damages.

11     There are circumstances in which a reviewing court may conclude that it is appropriate to remand for a new trial on future economic damages only.  (See, e.g., *Chronakis v. Windsor* (1993) 14 Cal.App.4th 1058, 1061 [remanding for a new trial on future economic damages only, because, although the jury's award of economic damages was the product of juror misconduct, the award of noneconomic damages was "unaffected by juror misconduct"].)  This is not such a case.  New or different evidence on Ludwig's future medical needs and expenses may affect the trier of fact's findings on noneconomic damages.  (See, e.g., *Dodson v. J. Pacific, Inc.* (2007) 154 Cal.App.4th 931, 938 [common experience indicates that a plaintiff subjected to medical procedures necessarily endures some amount of pain and suffering].)

24

**DISPOSITION**

The judgment is reversed.  The trial court's order excluding Hacienda Paraiso's damages experts, Jan Roughan, Dr. David Patterson, and David Weiner, is vacated, and the case is remanded for a new trial on Ludwig's future economic and noneconomic damages only.   The parties are to bear their costs on appeal.


SEGAL, J.

We concur:


PERLUSS, P. J.


ZELON, J.

25