Filed 9/1/20  Kanakis v. Olivas CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GEORGE KANAKIS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ERENDIRA JUDITH OLIVAS,<br><br>        Defendant and Respondent. | A152425<br><br>(San Mateo County<br>Super. Ct. No. CIV518367) |

Plaintiff George Kanakis suffered injuries in a motor vehicle collision caused by defendant Erendira Judith Olivas.  A jury awarded plaintiff $42,500 for his past medical expenses and past economic and noneconomic damages.  On appeal, plaintiff raises three claims of error:  (1) the trial court erroneously admitted into evidence a confidential settlement communication; (2) the testimony of defendant's medical expert should not have been admitted because it was speculative and beyond the scope of his expertise; and (3) the defense confused and misled the jury into awarding inadequate compensation for plaintiff's injuries.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 2010, plaintiff and defendant were involved in a motor vehicle collision in San Mateo County.  Defendant admitted she was negligent, and a jury trial was held to determine whether plaintiff had

sustained any injuries to his neck, back, and shoulder as a result of the accident,[1] and if so, the amount of damages he was entitled to receive.

At the start of trial, plaintiff filed several motions in limine to exclude evidence, including evidence regarding prior offers to compromise. In opposition, defendant argued that the evidence of certain statements by plaintiff—or more specifically, statements by plaintiff that omitted mention of neck, back, and shoulder pain during settlement discussions—pertained to his state of mind and credibility.

The trial court granted plaintiff's motion to exclude evidence of compromise offers, but soon revisited the issue of plaintiff's failure to mention all of his claimed injuries during settlement discussions. The court stated, "I think if this could be tailored—it's relevant to the plaintiff's state of mind and his complaint of injuries at the time or near the accident. If you can phrase the question in a way that it doesn't—that you spoke to someone representing the defendant within ten days after the accident, . . . and . . . that you did not claim damages for your neck or your arm, that's appropriate." The court later clarified that Evidence Code section "1152 does have exceptions for settlement discussions. It's not admitted for the purpose of establishing liability. Clearly, it can't. But in other issues, it is relevant, and I find it relevant . . . . [¶]. . . [¶] . . . [¶]  . . . It goes to the nature of [plaintiff's] claims for injuries shortly after the accident." However, the court prohibited any mention of the amounts plaintiff demanded. Speaking to defendant, the court explained, "the only thing that I wanted you to be able to pursue is that approximately ten days after the accident, [plaintiff] indicated that he was

---

[1]     Plaintiff's injuries to his wrists and hip from the accident were not disputed.

not seeking medical treatment for his back" and that he had not claimed injury to his neck and shoulder.

Later, as the parties attempted to stipulate to the admission of exhibits, plaintiff asked the court to exclude an insurance claim record that contained the substance of a January 6, 2011, email from plaintiff to James McNichols, an insurance representative for defendant.[2]  Because the email "discusses what [plaintiff] is seeking damages for", it was admitted at trial as defense exhibit K.  During cross-examination, plaintiff admitted there was nothing related to back, neck, or shoulder pain in the exhibit K email.

During trial, plaintiff called Dr. Kenneth Light, an orthopedic surgeon specializing in spinal surgery, who testified as a medical expert that plaintiff had a herniated disk that was impinging on the spinal canal and causing his pain symptoms.  Dr. Light recommended surgery for plaintiff, which would cost approximately $125,000.  Dr. Light further testified that if plaintiff chose not to undergo surgery, he would incur roughly $50,000 to $75,000 per year for pain management treatment and physical therapy sessions.

Plaintiff also called Jordan Carr, intern director of the South Bay management office of Stanford Healthcare, to testify about plaintiff's medical expenses.  Carr testified that Stanford "has currently received" $31,033.84 in

---

[2]     The email reads as follows: "To James McNichols [¶] I got this email address from Amy earlier today and I need some clarification on what to do next. [¶] 1. I have to see somebody about the pain in my wrists.  I thought I'd be over this by now but it's unbearable and I've run out of my pain medications.  I'm close to Sequoia hospital. [¶] Who do I see about this?  [¶] Is there therapy or something I can get to? [¶] 2. What do I do about the missing GPS (Garmin $300 when I bought it years ago) and my busted computer.  The computer had programs such as my Dauntless flight instructor CBT (appx $40), CRJ Computer based training program, that cost me appx $200, that I need to get up and running soon.  How does this get worked out?  Do I buy another one and send you the bill?"

3

payment for plaintiff's care, and that $44,742.85 was still outstanding, "some portion" of which Stanford expected to be paid.[3] When asked "how much of that roughly $31,000 has been paid by [plaintiff] himself," Carr responded, "Looks like just a little bit over $1,800," and the balance "looks like it would have been paid by insurance." Plaintiff renewed a prior objection he had made under the collateral source rule, and the trial court responded, "That question and answer are ordered stricken. The jury will totally disregard that."

Defendant called Dr. Clement Jones, an orthopedic spine surgeon. Based on his examination of plaintiff in March 2015 and his review of plaintiff's medical records, Dr. Jones concluded that plaintiff did not have a cervical disk herniation, a spinal cord injury, a shoulder impingement problem, a rotator cuff injury, or any cervical nerve root irritation. Dr. Jones further noted that none of plaintiff's treating physicians had recommended surgery to plaintiff. Dr. Jones opined that plaintiff's pain was psychosomatic, because he (Dr. Jones) was not able to identify any structural or organic causes of the pain, and none of the prescribed treatments plaintiff had undergone had alleviated his pain.

The jury entered a special verdict awarding plaintiff total damages of $42,500, which consisted of $31,000 for past medical expenses, $1,500 for total past economic damages, and $10,000 for past noneconomic loss. Plaintiff timely appealed.

---

[3]     Carr acknowledged that "[i]t would be completely speculation" to say how much of the $44,742.85 would be paid, but he testified "[t]here will be some portion recovered."

4

## DISCUSSION

### A. Settlement Communication

Plaintiff argues the trial court erred in allowing "the email Defense used as evidence" because it "likely was taken out of context in regards to the many emails sent back and forth between [the insurer] and [plaintiff]." Notably, plaintiff fails to identify the challenged email by citation to the record. (*Centex Homes v. St. Paul Fire & Marine Ins. Co.* (2018) 19 Cal.App.5th 789, 796–797 [appellant's duty to refer court to supporting portions of record].) In any event, we infer from references in the parties' briefs that the challenged email is the exhibit K email discussed earlier, and accordingly, we will construe plaintiff's arguments to relate to that correspondence.

We review the trial court's evidentiary rulings for abuse of discretion and see no abuse here. (*People v. Vasquez* (2017) 14 Cal.App.5th 1019, 1028.) Under Evidence Code section 1152, subdivision (a), evidence of settlement communications is inadmissible to prove liability for the claimed damages or loss. Here, the admission of the exhibit K email was not in contravention of the statute because defendant already admitted liability for the accident. Instead, as the trial court made clear, the exhibit K email was admitted as relevant to plaintiff's state of mind regarding his injuries and his credibility. (See *Fieldson Associates, Inc. v. Whitecliff Laboratories, Inc.* (1969) 276 Cal.App.2d 770, 773 (*Fieldson*) [letters containing offers of compromise did not violate Evidence Code section 1152 because they were not used to prove liability but invalidity of different claim.]) Moreover, the policy underlying Evidence Code section 1152—to encourage candid discussions in order to lead to the settlement of disputes (*Fieldson*, at p. 773)—was not undermined by exhibit K's admission because plaintiff always had a strong incentive to list

5

all of his injuries in order to recover for them, regardless of whether the email remained confidential.

Plaintiff also suggests the exhibit K email was taken out of context based on "the many emails sent back and forth" between him and the insurer. But he cites no other emails in the record and makes no attempt to explain just how the exhibit K email was misconstrued in light of other discussions. Having failed to present cogent argument and citations to the record to support this claim of error, we may treat the issue as waived. (*Friends of the Eel River v. Sonoma County Water Agency* (2003) 108 Cal.App.4th 859, 877.) Indeed, plaintiff does not otherwise contend or demonstrate that he offered an explanation to the jury as to why he did not list all of his ailments in the exhibit K email (and even assuming he did, it appears the jury did not find the explanation credible). Accordingly, we reject defendant's contentions regarding the exhibit K email.

### B. Dr. Jones's Testimony

Plaintiff contends that defense expert Dr. Jones "speculated on what the doctors were thinking and documenting on numerous occasions" and "attempt[ed] to read the mind of the clinician's [*sic*] through their medical records." Plaintiff further argues that because Dr. Jones had no psychiatric or psychological credentials, his testimony that plaintiff's pain was psychosomatic "overstepped the bounds of his expertise."

As a threshold mater, we note plaintiff's failure to object to Dr. Jones's testimony on these grounds during trial forfeits review of the matter on appeal. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 21.) But even overlooking plaintiff's forfeiture, we find no reversible error based on these arguments.

"A properly qualified expert may offer an opinion relating to a subject that is beyond common experience, if that expert's opinion will assist the trier

6

of fact.  [Citation.]  Even so, the expert opinion may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact.  [Citation.]  Moreover, an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 (*Bushling*).)  " 'Trial court judges have a substantial gatekeeping responsibility when it comes to expert testimony. [Citation.]  In particular, courts are to ensure that opinions are not speculative, based on unconventional matters or grounded in unsupported reasoning. [Citations.] We review a court's execution of these gatekeeping duties for an abuse of discretion.' "  (*Cooper v. Takeda Pharmaceuticals America, Inc.* (2015) 239 Cal.App.4th 555, 576.)

Medical records can be used as a basis for an expert medical opinion. (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743.)  In addition to reviewing plaintiff's medical records, Dr. Jones also performed an independent medical examination of plaintiff in March 2015.  Dr. Jones found there was no correlation between plaintiff's claimed neck and shoulder pain and C4 pathology, nor any correlation between plaintiff's asserted pain and his MRIs.  Dr. Jones also concluded that plaintiff's complaints were different from complaints of people who have disk herniation.

Although Dr. Jones cited the opinions and records of plaintiff's health care providers, Dr. Jones offered a reasoned explanation for his own opinion

as to why plaintiff did not meet the criteria for surgery.[4] Specifically, Dr. Jones explained that plaintiff had no neurological deficit, no progressive neurological worsening, no deformity, no instability, and his symptoms did not correlate to the MRI findings. Since Dr. Jones's testimony was supported by a reasoned explanation of why these underlying facts led to his opinion, it was not speculative. (*Bushling*, *supra*, 117 Cal.App.4th at p. 510.)

Dr. Jones's testimony was also within the scope of his expertise. A person may testify as an expert if he or she has special knowledge, skill, experience, training, or education sufficient to qualify him or her as an expert on the subject to which his testimony relates, and the witness's special knowledge, skill, experience, training, or education may be shown by any otherwise admissible evidence, including his or her own testimony. (Evid. Code, § 720.) Dr. Jones testified that his surgical experience included four years of orthopedic surgery residency training, a spine surgery fellowship at Vanderbilt University, and his current practice of orthopedic spine surgery. His practice was primarily with adults with cervical disk herniations, lumbar disk herniations, spinal stenosis, and people who have neck and back pain but are not surgical candidates. Dr. Jones estimated that since 1992, he performed on average about 100 surgeries a year.

In light of this testimony, the trial court did not abuse its discretion in determining that Dr. Jones was qualified to testify on any structural and organic issues (or lack thereof) in plaintiff's neck, back, and shoulder.

---

[4] Plaintiff's citation to Federal Rules of Civil Procedure, rule 802, suggests the argument that Dr. Jones's testimony included inadmissible hearsay. However, because plaintiff provides no meaningful argument or analysis on this point, and no argument as to how any such error might have prejudiced him, we treat the issue as waived. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)

Dr. Jones concluded that "from [his] review of the records, from [his] interviewing and examining [plaintiff], it's not clear at all what his specific . . . pain generator is" and accordingly, "there's not a specific structural injury or lesion that's going to be made better." Dr. Jones's conclusion that plaintiff's pain was psychosomatic derived from his testimony that he was unable to locate a single pain generator or to find anything structurally correlated to plaintiff's pain, all of which was within Dr. Jones's areas of expertise.

Plaintiff's reliance on the federal decision in *Frye v. U.S.* (D.C. Cir. 1923) 293 F.1013 (*Frye*) is misplaced. *Frye* held that expert opinion based on a scientific technique is inadmissible unless the technique is "generally accepted" as reliable in the scientific community.[5] Nothing in *Frye* supports plaintiff's contention that psychiatric or psychological credentials were required for an orthopedic surgeon with Dr. Jones's qualifications to testify about the lack of structural problems in plaintiff's neck, shoulder, and back.

In sum, we conclude the trial court did not abuse its discretion in allowing Dr. Jones's testimony.

## C. The Damages Calculation

Plaintiff contends the defense attempted to confuse the jury and witness Carr "by not following the rules of compensation as dictated by" *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541 (*Howell*). According to plaintiff, the defense "created substantial undue prejudice, confused the issue of compensation, and mislead [*sic*] [the jury], into qualifying the value of compensation at $1,800."

---

[5] *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579, at page 587, held the *Frye* "general acceptance" test was superseded by the Federal Rules of Evidence, which provide the applicable standard for admitting expert scientific testimony in a federal trial.

9

Plaintiff's conclusory arguments and vague references to "the rules of compensation" in *Howell* are insufficient to demonstrate error. In *Howell*, the Supreme Court held that where an injured plaintiff's medical provider accepts a discounted payment from a health insurer for the plaintiff's care, the plaintiff may recover no more than the amounts paid by the insurer for the medical services received or still owing at the time of trial, and the plaintiff may not recover undiscounted amounts stated in the provider's bill. (*Howell*, *supra*, 52 Cal.4th at pp. 548–549.) Here, plaintiff provides no cogent argument or analysis of *Howell* to demonstrate error by the trial court below.[6]

In contending the defense misled the jury into "qualifying the value of compensation at $1,800," plaintiff appears to be arguing there was a violation of the collateral source rule. The collateral source rule precludes deduction of compensation a plaintiff has received from sources other than the tortfeasor from damages the plaintiff would otherwise collect from the tortfeasor, which includes money an insurer has paid to medical providers on the plaintiff's behalf. (*Howell*, *supra*, 52 Cal.4th at pp. 548, 551.) The decision whether to admit evidence under the collateral source rule is subject to an abuse of discretion standard on appellate review. (*Hrnjak v. Graymar*, Inc. (1971) 4 Cal.3d 725, 733.)

Plaintiff once again fails to demonstrate any prejudicial error. Although the defense asked Carr about the amounts of medical expenses paid by plaintiff personally and whether the balance was paid by insurance, the

---

[6]    Although one may infer that the jury awarded plaintiff nothing for the $44,742.85 in outstanding medical expenses (of which Stanford Healthcare intended to recover only "some portion"), plaintiff provides no argument that this was due to trial court error or any other defect or irregularity in the proceedings.

10

trial court immediately struck the question and response and instructed the jury to disregard the testimony. The jury was also explicitly instructed not to consider collateral source payments or whether any of the parties in the case had insurance. In the absence of evidence to the contrary, we assume the jury followed the instructions and applied the law as instructed by the trial court. (*People v. Lucas* (2014) 60 Cal.4th 153, 321.) Here, moreover, it is clear the jury did not limit plaintiff's recovery to the amounts he personally paid.

## DISPOSITION

The judgment is affirmed. Defendant is entitled to her costs on appeal.

11

_____

FUJISAKI, J.

We concur.

_____

SIGGINS,  P.J.

_____

PETROU, J.

(A152425)

12